Stacey R. HUDDLESTON, Jr., Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 20A05–1012–PC–813.

Court of Appeals of Indiana.

July 8, 2011.

Transfer Denied Sept. 16, 2011.

Stacey R. Huddleston, Jr., Carlisle, IN, Appellant Pro Se.

Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Stacey Huddleston, Jr., appeals the denial of his petition for post-conviction relief ("PCR petition"), which challenged his conviction for murder. We reverse and remand.

### Issue

Huddleston raises two issues, one of which we find dispositive: whether Huddleston's guilty plea to murder was invalid because he simultaneously protested his innocence.[1]

### Facts

The evidence, as elicited at Huddleston's guilty plea hearing, was recounted as follows by this court in Huddleston's direct appeal:

On December 29, 2004, Huddleston received a telephone call from his cousin, Ronald White ("White"), who informed Huddleston that White's apartment had been burglarized and Huddleston's Play Station 2 had been stolen. White suspected that fifteen year-old S.G. was to blame, and White told Huddleston that he "would take care of it." Tr. at 5. Huddleston wanted to fight S.G. After the telephone call, Huddleston went to White's apartment, and they sat around until Huddleston left for the gas station. On his way, he picked up S.G. because he wanted to see how S.G. would react to information about the break-in. Huddleston invited S.G. to smoke marijuana at White's residence, and S.G. agreed.

Once there, Huddleston told White that he wanted to fight S.G. Huddleston and White went outside and White suggested that Huddleston go in and get S.G. Huddleston "knew a way to get [S.G.] because ... [he] liked smoking cigarettes." Tr. at 13. After smoking, White whispered in Huddleston's ear that Huddleston should run back upstairs and get White's knife. Huddleston complied and all three began walking to the store. Once there, White got a pop can and smacked S.G. in the face with it. White brandished the knife and S.G. took off running. Huddleston and White pursued S.G. and, when White caught S.G., he pulled him into a house and stabbed him once in the back. Huddleston ran away. S.G. died as a result of the attack.

*Huddleston v. State,* No. 20A04–0603–CR–107, slip op. pp. 2–3 (Ind. Ct.App. June 23, 2006).

---

1. Huddleston also contends that he received ineffective assistance of trial counsel, but we need not address that claim.

On January 5, 2005, the State charged Huddleston with murder. On the morning that the third day of trial was set to begin, September 21, 2005, Huddleston pled guilty on advice of counsel. The factual basis for the plea consisted solely of Huddleston being questioned by the deputy prosecutor. During Huddleston's testimony, he insisted that he only wanted to fight S.G., i.e., "[j]ust a couple punches." App. p. 45. Huddleston stated that he retrieved the knife for White because he believed White intended to scare S.G. with it, and that scaring S.G. would be "the best thing then me having to beat him up too, you know." *Id.* at 54.

At the conclusion of the factual basis questioning, the following transpired:

Q: Do you understand that because you provided the knife that you are an accessory in this case?

A: Yes, ma'am.

Q: Do you understand what accessory means?

A: Yeah.

Q: What does accessory mean?

A: Like the demonstration you showed me with—if a person robs a bank, he's part of it.

Q: Okay. Like the get-away driver?

A: Yes, ma'am.

Q: Okay. And you understand that because you got the knife and gave it to Ronald knowing that you were going to beat up Shannon, that could have happened?

A: I really didn't think my cousin Ronald was capable of doing anything like that, so I wanted—it wasn't no [sic] intentionally. I didn't know he was going to do that.

Q: It wasn't intentionally. Correct?

A: It was a big surprise. That was the most surprising—the most biggest surprise in my whole entire life that I ever seen.

Q: Okay. But when you gave Ronald the knife it was possible. Correct?

A: Yes, it could be possible.

Q: And you understand that because you are an accessory in this case you are guilty of the crime of murder?

A: Yes, ma'am.

*Id.* at 62–63.

Before accepting Huddleston's guilty plea, the trial court questioned him further:

Q: And you've told me that you're taking responsibility for those acts. Is that correct?

A: I'm taking responsibility for what I done, yes.

Q: Well, I understand you're [sic] position. I'm not going to accept your plea of guilty unless you tell me you knowingly participated in the killing of Mr. Goins. Did you knowingly participate in the killing of Mr. Goins?

A: Yeah. I was there. Yes, sir. I was there, yes, sir.

Q: I'll try it one more time with you, Mr. Huddleston. Are you telling me you're guilty of this offense of murder as charged?

A: Yes, sir.

*Id.* at 68–69. The trial court then accepted Huddleston's plea, and subsequently sentenced him to fifty years. This court affirmed the sentence on direct appeal.

On March 5, 2010, Huddleston filed a PCR petition and indicated that he wished to proceed pro se. The petition alleged that Huddleston's plea was not entered knowingly, intelligently, and voluntarily, and that his trial counsel had been ineffective. After conducting a hearing, the PCR court denied Huddleston's petition on December 6, 2010. Huddleston now appeals.

### Analysis

 Post-conviction proceedings provide defendants the opportunity to raise issues not known or available at the time of the original trial or direct appeal. *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind.2007), *cert. denied.* "In post-conviction proceedings, the defendant bears the burden of proof by a preponderance of the evidence." *Id.* We review factual findings of a post-conviction court under a "clearly erroneous" standard but do not defer to any legal conclusions. *Id.* We will not reweigh the evidence or judge the credibility of the witnesses and will examine only the probative evidence and reasonable inferences therefrom that support the decision of the post-conviction court. *Id.* Additionally, the PCR court here entered findings of fact and conclusions thereon, as required by Indiana Post–Conviction Rule 1(6). We cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support the judgment. *Lile v. State*, 671 N.E.2d 1190, 1192 (Ind.Ct.App.1996).

 Huddleston contends that his plea was not knowingly, intelligently, or voluntarily entered. Specifically, he contends that by insisting during the guilty plea factual basis hearing that he did not know or intend that S.G. would be killed, the trial court should not have accepted his guilty plea, pursuant to the holdings in *Harshman v. State*, 232 Ind. 618, 115 N.E.2d 501 (1953), and *Ross v. State*, 456 N.E.2d 420 (Ind.1983). In *Harshman*, our supreme court held, "a plea of guilty tendered by one who in the same breath protests his innocence, or declares he actually does not know whether or not he is guilty, is no plea at all. Certainly it is not a sufficient plea upon which to base a judgment of conviction." *Harshman*, 232 Ind. at 621, 115 N.E.2d at 502. In *Ross*, the court reaffirmed "that a judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time. To accept such a plea constitutes reversible error." *Ross*, 456 N.E.2d at 423.

Indiana continues to follow the *Ross/Harshman* rule. *See Norris v. State*, 896 N.E.2d 1149, 1152 (Ind.2008). "This rule was designed to both increase the reliability of guilty pleas and prevent the diminishment of respect for the court system as jailing people who committed no crime." *Id.* The rule represents a policy decision by our supreme court that is not grounded in the federal constitution or federal jurisprudence. *Trueblood v. State*, 587 N.E.2d 105, 107 (Ind.1992), *cert. denied.*[2] In order for the *Ross/Harshman* rule to apply, a defendant's protestation of innocence must occur at the same time as the defendant attempts to enter the plea and not at a later time or in a different proceeding, with a possible (but not automatic) exception for death penalty cases. *Carter v. State*, 739 N.E.2d 126, 129 (Ind. 2000).

The State has not directly responded to Huddleston's argument that the trial court's acceptance of his guilty plea violated the *Ross/Harshman* rule.[3] And, after

---

**2.** The United States Supreme Court has held that where a strong independent factual basis exists for a guilty plea, there is no federal constitutional barrier to accepting a guilty plea from a defendant who simultaneously asserts innocence, although states may adopt rules precluding acceptance of such pleas. *See North Carolina v. Alford*, 400 U.S. 25, 38,

91 S.Ct. 160, 167–68, 27 L.Ed.2d 162 (1970). Through *Ross*. Indiana courts may not accept so-called *"Alford* pleas."

**3.** The State argues that Huddleston's plea was not coerced, and that there was a sufficient factual basis for it. Although the *Ross/Harshman* rule might be more closely related to factual basis concerns than voluntariness con-

reviewing the record, we are compelled to conclude that the rule was violated here. In order to convict a defendant of a crime under an accomplice theory of liability, there must be evidence that the defendant knowingly or intentionally aided, induced, or caused another person to commit that offense. Ind.Code § 35–41–2–4. With specific respect to this case, to convict Huddleston as White's accomplice in the murder of S.G., there needed to be evidence that White killed S.G., and that Huddleston knowingly or intentionally aided and abetted White in killing S.G., which in turn required proof that Huddleston knew or intended that S.G. would be killed. *See Taylor v. State,* 840 N.E.2d 324, 336–37 (Ind.2006); *see also Boney v. State,* 880 N.E.2d 279, 295 (Ind.Ct.App.2008) (noting that in order to convict defendant of murder as accomplice for providing murder weapon to killer, defendant had to know that he was aiding in the commission of murder), *trans. denied.*

Here, despite professing that he wanted to plead guilty to murder, Huddleston quite clearly and unequivocally stated during the factual basis colloquy that he did not intend for S.G. to be killed, nor did he know or anticipate that White would kill S.G. These statements constitute an outright denial by Huddleston that he possessed the requisite mens rea to be convicted of murder as White's accomplice. Perhaps recognizing the difficulty presented by Huddleston's statements, the trial court attempted to question him further as to whether he truly wanted to plead guilty; as the record reflects, it took three attempts by the trial court to extricate a simple "yes" from Huddleston as to whether he was guilty of murder.

We cannot conclude that Huddleston's ultimate "yes" to the question of whether he was guilty of murder was sufficient to override his earlier statements expressly denying the requisite culpability for murder. In *Wingham v. State,* 780 N.E.2d 1164, 1165 (Ind.Ct.App.2002), this court held that a trial court erred in accepting a guilty plea to operating a vehicle while intoxicated ("OWI"), where the defendant had expressly denied being intoxicated. This was so, even after the trial court subsequently advised, and the defendant said that he understood, that entering a plea of guilty to OWI would constitute an admission that he had been intoxicated. Here, likewise, despite the trial court's efforts to extract an unequivocal admission from Huddleston that he was guilty of murder, we cannot square any such admission with his statements, made during the same proceeding, that he lacked the requisite culpability for that offense. The trial court erred in accepting the guilty plea; consequently, the post-conviction court erred in denying Huddleston's PCR petition.

## Conclusion

We reverse the denial of Huddleston's PCR petition, and remand for further proceedings consistent with this opinion.

Reversed and remanded.

RILEY and DARDEN, JJ., concur.

cerns, it is a rule that exists and is applied separately from traditional factual basis analysis. "[T]here is a difference between cases where the defendant actually denies guilt as to some necessary element of the offense and cases where the defendant merely fails to admit the existence of such an element." *Wingham v. State,* 780 N.E.2d 1164, 1165 (Ind.Ct.App.2002). In the latter scenario, a sufficient factual basis may be established by evidence aside from a defendant's statements. *Id.*