## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 15 2016, 9:12 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Tracy A. Nelson
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Demajio Ellis,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | March 15, 2016<br><br>Court of Appeals Cause No.<br>71A05-1511-PC-1845<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable Jerome Frese,<br>Judge<br><br>Trial Court Cause No.<br>71D03-1301-PC-1 |

**Barnes, Judge.**

# Case Summary

[1] Demajio Ellis appeals the trial court's denial of his petition for post-conviction relief. We affirm.

# Issue

[2] The sole restated issue is whether Ellis consistently denied culpability for the crimes to which he plead guilty, undermining the reliability of his plea and requiring the post-conviction court to vacate it as a matter of law.

# Facts

[3] In November 2010, Ellis and his cousin, Shawn Alexander, approached two teenage boys and forced them into an abandoned house. There, Ellis and Alexander took a pocket knife and a hat and/or jacket from the boys. Alexander slashed the boys' throats, and he and Ellis left.

[4] The State charged Ellis with two counts of attempted murder and two counts of attempted robbery, all Class A felonies, under an accomplice theory of liability. On May 11, 2011, Ellis pled guilty to all four charges, and the State agreed to a fifty-year cap on Ellis's executed sentence. During the June 22, 2011, sentencing hearing, Ellis filed, and then withdrew, a motion to withdraw his guilty plea. The trial court convicted Ellis of two counts of Class A felony attempted murder and two counts of attempted robbery as Class C felonies. The trial court sentenced Ellis to consecutive fifty-year sentences with thirty years suspended for each of the attempted murder convictions. It sentenced him to eight years for each of the attempted robbery convictions and ordered

him to serve those sentences concurrent with his sentences for the Class A felonies. Ellis's aggregate sentence was 100 years with sixty years suspended to probation.

On January 4, 2013, Ellis filed a petition for post-conviction relief, which counsel later amended twice. On August 28, 2015, the trial court held an evidentiary hearing. On October 12, 2015, the trial court denied Ellis's second amended petition for post-conviction relief. Ellis appeals.

## Analysis

At the outset, we note that Ellis contends the trial court failed to make specific findings of fact and enter conclusions of law with regard to the issue he appeals; the State agrees. Appellant's Br. p. 7; Appellee's Br. p. 16. The parties disagree, however, regarding the standard of review we should apply in such a situation. Ellis urges us to review his claim do novo. The State argues we may either remand this matter for findings and conclusions or address the issue on its merits "if the outcome is clear under any standard of review or if the issues are purely legal and not factual." Appellee's Br. p. 17.

We have reviewed the trial court's order and determined it "contains sufficient information to enable review on the merits." *See Herman v. State*, 526 N.E.2d 1183, 1184 (Ind. 1988). Even if the order in this matter did not include the requisite specificity, Indiana courts have long held, "the failure to enter specific findings of fact and conclusions of law is not reversible error" and does not mandate a remand for more specific findings. *Allen v. State*, 749 N.E.2d 1158,

1170 (Ind. 2001), *cert. denied*. Instead, where, as here, the issues are clear, the parties address them on their merits, and those issues are sufficiently presented for our review, we will find no reversible error. *See Lowe v. State*, 455 N.E.2d 1126, 1128 (Ind. 1983) (citing *Sims v. State*, 422 N.E.2d 436, 438 (Ind. Ct. App. 1981)); *Adcock v. State*, 22 N.E.3d 720, 724 (Ind. Ct. App. 2014).

[8] "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Post-Conviction Rule 1(5). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We review a post-conviction court's factual findings under a "clearly erroneous" standard and do not defer to any legal conclusions. *Huddleston v. State*, 951 N.E.2d 277, 280 (Ind. Ct. App. 2011), *trans. denied*. We do not reweigh the evidence or judge the witnesses' credibility and will examine only the probative evidence and reasonable inferences that support the post-conviction court's decision. *Id.* We must determine if the court's findings are sufficient to support the judgment. *Id.*

[9] Ellis contends we should vacate his guilty plea pursuant to the *Ross/Harshman* rule because he protested his innocence during his guilty plea hearing and the trial court committed reversible error by accepting it.[1] *Harshman v. State*, 232 Ind. 618, 115 N.E.2d 501 (1953); *Ross v. State*, 456 N.E.2d 420 (Ind. 1983).

---

[1] Although Ellis presented an additional argument—whether the factual basis was sufficient to support his guilty plea—in his petition for post-conviction relief, he does not raise that issue on appeal.

In *North Carolina v. Alford*, the Supreme Court found the United States Constitution does not bar a court from accepting a guilty plea when the defendant maintains innocence, but it recognized that the states may refuse to accept such pleas. 400 U.S.25, 38-39, 91 S.Ct. 160, 168 (1970). Indiana law has long refused to accept them: "a plea of guilty tendered by one who in the same breath protests his innocence, or declares he does not actually know whether or not he is guilty, is no plea at all." *Harshman*, 232 Ind. at 621, 115 N.E.2d at 502. "[A] judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time. To accept such a plea constitutes reversible error." *Ross*, 456 N.E.2d at 423. Although *Harshman* and *Ross* clearly established that an Indiana court may not accept a guilty plea that is accompanied by a denial of guilt, application of that rule is contingent upon the protestation of innocence occurring at the same time the defendant attempts to enter the plea. *Carter v. State*, 739 N.E.2d 126, 129 (Ind. 2000).

[11] In support of his argument, Ellis directs us to these passages of the transcript:

> [DEFENSE ATTORNEY]: Okay. At some point Shawn Alexander had a knife either that he got from them or he had before and he cut both their throats; is that right?
>
> MR. ELLIS: Yes, sir.
>
> * * * * *

[DEFENSE ATTORNEY]: Now, your involvement in this is that you were there for one thing, and you did hit or kick one of the individuals; is that right?

MR. ELLIS: Yes, sir.

[DEFENSE ATTORNEY]: And are you admitting by just being there and by your assault on one of the individuals you aided Shawn Alexander in doing the things that he did? You essentially helped him do what he did?

THE COURT: Well, you didn't go away and say cut this out or –

[DEFENSE ATTORNEY]: Right. You didn't stop him?

THE COURT: -- argue it or anything?

**MR. ELLIS: I did tell him don't do it, sir, you know.**

THE COURT: Well, but you still stayed around . . . .

Appellant's Br. p. 9 (quoting Ex. 4, pp. 23-25) (emphasis added by Appellant) (omissions by Appellant). This is the only portion of the guilty plea hearing to which Ellis cites. Instead, Ellis quotes generous portions of the transcript from the *sentencing* hearing and bases much of his argument on the dialogue from that proceeding. *See* Appellant's Br. pp. 10-12.

[12] The *Ross* rule, by its language, applies only to defendants who plead guilty and maintain their innocence at the same time. *Patton v. State*, 517 N.E.2d 374, 376

(Ind. 1987). In order for the *Ross/Harshman* rule to apply, a defendant's protestation of innocence must occur at the same time as the defendant attempts to enter the plea and not at a later time or in a different proceeding.[2] *Johnson v. State*, 960 N.E.2d 844, 849 (Ind. Ct. App. 2012) (citing *Cater*, 739 N.E.2d at 129) (emphasis added).

> There is a substantive difference between a defendant who maintains innocence but asks the court to impose punishment without trial, and one who concedes guilt in one proceeding but contradicts that admission by claiming innocence in a later proceeding. In the former case, the defendant has consistently denied culpability, and has therefore never made the reliable admission of guilt that Indiana requires. In the latter case, a defendant under oath has told the court two opposing stories, both of which cannot be true.

> An admission of guilt that is later retracted may nonetheless be reliable. Admissions of guilt and assertions of innocence come in many shades of gray, and the trial judge is best situated to assess the reliability of each.

*Carter*, 739 N.E.2d at 130. The case law is clear: we may not consider the statements Ellis made during the sentencing hearing.

[13] The following is the entirety of the factual basis given during Ellis's guilty plea hearing, giving full context to the brief passage upon which Ellis relies:

---

2 Captial cases are the exception to this rule. *See Patton*, 517 N.E.2d at 376 ("Patton did not protest his innocence at the same time as he pled guilty, but he did firmly contradict his admission of guilt at the sentencing hearing. Although the plea and contradiction were separate in time, the principle of *Ross* must apply to the sentencing hearing in a capital case.")

THE COURT:       Can we have a factual here?

[DEFENSE ATTORNEY]:       Mr. Ellis, back on November the 6th of last year you were with Shawn Alexander; is that right?

MR. ELLIS: Yes, sir.

[DEFENSE ATTORNEY]:       And sometime during that night you two met up with guys named Jerry and Jason at McDonald's originally on South Michigan Street; is that right?

MR. ELLIS:       Yes, sir.

[DEFENSE ATTORNEY]:       And then later when you guys were walking along by Riley High School you saw those two again?

MR. ELLIS:       Yes, sir.

[DEFENSE ATTORNEY]:       Now, we know part of what you're charged with is that you aided Shawn in doing things, that he's the main one who was involved in doing this; is that right?

MR. ELLIS:       Yes, sir.

[DEFENSE ATTORNEY]:       And the first thing that was done I guess is he somewhat forced these guys to go into a vacant house; is that right?

MR. ELLIS:       Yes, sir.

[DEFENSE ATTORNEY]: And then later out into an alley I guess. Right?

MR. ELLIS: Yes, sir.

[DEFENSE ATTORNEY]: At some point he – well, tell me what he did.

MR. ELLIS: Okay. It started off earlier when we were at McDonald's. Later on we seen them. We was walking down St. Joe, and they was walking down Calvert Street. He called their name. We went up to them, and we was like what's up, you know, we seen ya'll earlier, you know.

Then the police ran past us coming from St. Joe going down Calvert. So Shawn and I started walking off. I guess he thought the police were called. Somebody called the police. Because, you know, at this time he had one of they knives, you know. I guess he thought that, you know, maybe somebody called the police said that he went in they pocket or whatever. So then –

[DEFENSE ATTORNEY]: You said he had one of their knives. How did he get one of their knives?

MR. ELLIS: I guess he took it out the pocket. Because, you know, we walked up, and you know, I didn't speak to them at McDonald's, and like, you know, he knew who they was from McDonald's like.

Like from the story I didn't do nothing, you know, sir. I was involved to the point that I did hit somebody, but I didn't cut nobody. I did not rob nobody, sir.

[DEFENSE ATTORNEY]: Okay. At some point Shawn Alexander had a knife either that he got from them or he had before and he cut both their throats; is that right?

MR. ELLIS: Yes, sir.

[DEFENSE ATTORNEY]: Okay. Not to the point that they were dead because they got up and got away. But he cut their throats. Right?

MR. ELLIS: Yes, sir.

[DEFENSE ATTORNEY]: And part of cutting their throats was that you guys either attempted or did take some property from them. Right?

MR. ELLIS: Yes, sir.

[DEFENSE ATTORNEY]: And one of the things that was probably taken was a knife?

MR. ELLIS: Yes, sir.

[DEFENSE ATTORNEY]: But then there was also a hat or something else that was taken – or a coat that was taken from somebody else. Right?

MR. ELLIS: Yes, sir.

[DEFENSE ATTORNEY]: Now, your involvement in this is that you were there for one thing, and you did hit or kick one of the individuals; is that right?

MR. ELLIS:          Yes, sir.

[DEFENSE ATTORNEY]:          And are you admitting by just being there and by your assault on one of the individuals you aided Shawn Alexander in doing the things that he did?  You essentially helped him do what he did?

THE COURT:          Well, you didn't go away and say cut this out or –

[DEFENSE ATTORNEY]:          Right.  You didn't stop him?

THE COURT:          -- argue it or anything?

MR. ELLIS:          I did tell him don't do it, sir, you know.

THE COURT:          Well, but you still stayed around.  You did hit one of them or kick them or something?

MR. ELLIS:          Yes, sir.

THE COURT:          Why did you do that?

MR. ELLIS:          You know –

THE COURT:          Being stupid?

MR. ELLIS:          You know, it was my decision I made to do.

THE COURT:          Okay.  Okay.  All this was here in South Bend.  Right?

MR. ELLIS:        Yes, sir.

THE COURT:        Okay.  Are you okay on the factual?  What was the – oh, serious bodily injury, was it?  Was it serious bodily injury?

[THE STATE]:      Yes.

THE COURT:        Surely if somebody takes a knife and cuts your throat even a little bit, that's pretty serious stuff; wouldn't you agree?

MR. ELLIS:        Yes, sir.

THE COURT:        I mean you could hit a carotid or whatever. Right?

MR. ELLIS:        Uh-huh.

THE COURT:        And he cut both of them?

MR. ELLIS:        Yes, sir.

THE COURT:        Gees.  That's terrible.  Okay.  All right.  Yes? What?

[THE STATE]:      Your Honor, the State does generally agree with Mr. Ellis.  Based on lots of the interviews and victims in this case and in the other ones, we do believe that Mr. Alexander was the primary actor.  But it is also the State's position that Mr. Ellis was a part of it, did act to help to assist, aid, and that's what he's agreeing to today is my take on this.  Is that correct?

MR. ELLIS:        Yes, sir.

THE COURT:        Yea, I guess the bottom line on it, Demajio, is you didn't stay there because you were afraid that he'd kill you if you tried to leave or something?  That wasn't the situation?

MR. ELLIS:        No, sir.

THE COURT:        You had made a very bad decision?

MR. ELLIS:        Yes, sir.

THE COURT:        Okay.  All right.  Let's get a pre-sentence report.

Ex. 4, pp. 21-27.

[14]    The post-conviction court concluded:

This Court was not required to reject Defendant's plea when he himself had acknowledged that he had participated with Shawn Alexander in confronting the two victims, physically attacking them, failing to oppose Alexander's cutting of their throats, failing to withdraw (at the least) from this attack, and sharing in its fruits.

Appellant's App. p. 4.  Implicit in the trial court's conclusion is that Ellis did not maintain his innocence.  To the extent the post-conviction court relied on statements Ellis made during the sentencing hearing, that reliance is improper. Nonetheless, our review of the entire guilty plea hearing reveals that Ellis did not consistently deny his guilt in such a way that would render his plea

unreliable. Instead, Ellis admitted that he aided Alexander in forcing two boys into a vacant house and then into an alley, that a knife and at least one article of clothing was taken from one of the boys, that Alexander cut the boys' throats, that Ellis himself hit or kicked one of the boys, and that "it was [Ellis's] decision [he] made to do." *See* Ex. 4, pp. 22-25.

[15] Ellis protested his role as the primary actor—"Like from the story I didn't do nothing, you know, sir. I was involved to the point that I did hit somebody, but I didn't cut nobody. I did not rob nobody, sir."—but the State charged Ellis under an accomplice theory of liability. *Id.* at 23. Whether Ellis was the primary actor or Alexander's accomplice is a distinction without a difference in this case. "It is well established that a person who aids another in committing a crime is just as guilty as the actual perpetrator." *Hart v. State*, 30 N.E.3d 1283, 1288 (Ind. Ct. App. 2015), *trans. denied*. Ellis's explanation that he was not the primary actor is not a claim of innocence, and it does not affect the reliability of his guilty plea. Ellis also unwaveringly admitted—twice—that he aided Alexander. *See* Ex. 4, p. 22 (answering, "Yes, sir" to the question, "Now, we know part of what you're charged with is that you aided [Alexander] in doing things, that he's the main one who was involved in doing this; is that right?") and *Id.* at 26 (answering, "Yes, sir" to the question, "[I]t is also the State's position that Mr. Ellis was a part of it, did act to help to assist, aid, and that's what he's agreeing to today is my take on this. Is that correct?").

[16] Ellis contends, "[d]uring the guilty plea hearing, no one mentioned specific intent, much less asked Ellis if he intended for his accomplice to kill the victims.

Ellis denied any such intent by telling the court he instructed the accomplice not to cut the victims' throats." Appellant's Br. p. 9. He directs our attention to his statement, "I did tell him don't do it, sir, you know." *See* Appellant's Br. p. 9 (quoting Tr. p. 25). We do not find that statement to be as clear-cut as Ellis argues it is. Ellis did not deny his culpability. Further, that single statement, read in the context of Ellis's admissions, does not amount to the consistent denial of culpability Indiana case law requires to undermine the reliability of his plea. *See Carter*, 739 N.E.2d at 130.

[17] Ellis seems to conflate protestation-of-innocence claims and claims that a guilty plea lacked a sufficient factual basis. "[T]he *Ross/Harshman* rule is applied separately from traditional factual-basis analysis." *Johnson v. State*, 960 N.E.2d 844, 849 (Ind. Ct. App. 2012). "[T]here is a difference between cases where the defendant actually denies guilt as to some necessary element of the offense and cases where the defendant merely fails to admit the existence of such an element." *Id.* (citation omitted) (alteration in *Johnson*). In the latter scenario, an appellant must show he was prejudiced by the error and that establishing a factual basis would have affected his decision to plead guilty.[3] *State v. Eiland*, 723 N.E.2d 863, 864-65 (Ind. 2000). Ellis has waived any claim that the factual

---

[3] "A factual basis may be established by relatively minimal evidence about the elements of the crime from which the court could reasonably conclude that the defendant is guilty . . . 'Reasonably concluding' that a defendant is guilty for purposes of a factual basis is not the same as concluding guilt beyond a reasonable doubt." *Graham v. State*, 941 N.E.2d 1091, 1098 (Ind. Ct. App. 2011) *aff'd on reh'g*, 947 N.E.2d 962 (Ind. Ct. App. 2011).

basis was insufficient in this case because he did not raise the issue on appeal. Therefore, we need not determine whether the factual basis was sufficient.

## Conclusion

[18] Ellis entered a reliable guilty plea and did not deny his culpability. His plea should not be vacated as a matter of law. The post-conviction court's order denying Ellis's petition is not clearly erroneous. We affirm.

[19] Affirmed.

Robb, J., and Altice, J., concur.