## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 22 2016, 9:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana
Indianapolis, Indiana

Steven H. Schutte
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Heffern, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | July 22, 2016 <br><br> Court of Appeals Cause No. 38A02-1509-PC-1325 <br><br> Appeal from the Jay Circuit Court <br><br> The Honorable Brian D. Hutchison, Judge <br><br> Trial Court Cause No. 38C01-1109-PC-2 |

**Barnes, Judge.**

## Case Summary

[1] Michael Heffern appeals the post-conviction court's denial of his petition for post-conviction relief challenging convictions for murder and Class B felony robbery. We affirm.

## Issue

[2] The issue before us is whether Heffern received effective assistance of appellate counsel.

## Facts

[3] On September 7, 2008, Michael Heffern and Joseph Randall went to Tina Whiting's home in Portland, Indiana, to watch a football game with Whiting, Addison Pijnappels, Addison's husband, Tom Smith, and Rod Berry. Whiting told Heffern there was a man, Shawn Buckner, with whom she was having problems. Heffern asked Whiting if she wanted him to beat up Buckner. Whiting told Heffern that if he assaulted Buckner, he might be able to take some pills from Buckner. Heffern and those present at the party discussed beating Buckner and taking his pills.

[4] After they all agreed to assault Buckner, Whiting and Pijnappels left to find Buckner. The two women lured Buckner to Whiting's residence by promising to have a sexual encounter with him. Heffern, Berry, and Smith hid in Whiting's home until the women returned with Buckner. After Buckner entered the house, Heffern began assaulting him. Buckner tried to resist, but Berry grabbed him and began hitting him as well. Buckner also tried to escape

from the men's grasp and tried to run, but Smith pushed Buckner, causing him to fall to the floor in the kitchen. The men then started kicking Buckner to prevent him from standing up. As Buckner moaned, the men continued to kick and punch him numerous times while lying on the floor. The men then removed Buckner's clothing and found he had $20. Smith gave the money to Pijnappels and told her to go get more beer. Smith indicated he was going to cut off Buckner's penis, but Heffern stated he should not.

The men wrapped Buckner in a blanket and carried him out to Berry's vehicle. While driving around, Heffern punched Buckner numerous times to stop his moaning. The men stopped at a cornfield, and Heffern and Smith took Buckner into the field, where Buckner was stabbed to death. The men returned to Whiting's home and began cleaning up the house to eliminate evidence of the assault. The clothing that the men wore during the attack were placed in a trash bag and later burned in a corn field.

Heffern was subsequently convicted of murder and Class B felony robbery. At Heffern's sentencing hearing, the trial court identified a number of aggravating factors. Based on the aggravating factors, the trial court imposed an additional five years above the advisory sentence on each count and ordered the terms to run consecutively for an aggregate sentence of seventy-five years. Heffern appealed his conviction. The issues Heffern's attorney raised on direct appeal were whether: (1) the trial court properly allowed the State to amend the charging information, changing count 2 from robbery resulting in serious bodily injury to robbery while armed with a deadly weapon; (2) the trial court abused

its discretion when it admonished the jury regarding police officers' statements on a videotape and corresponding transcript admitted into evidence but did not give a similar preliminary or final instruction; (3) the evidence was sufficient to support Heffern's convictions; and (4) the entry of judgment of conviction for murder and robbery with a deadly weapon violated Heffern's constitutional right to be free from double jeopardy. We affirmed in a memorandum decision, and our supreme court denied transfer. *Heffern v. State*, No. 38A05-1007-CR-462 (Ind. Ct. App. Apr. 26, 2011), *trans. denied*.

[7] Heffern filed a post-conviction relief petition, claiming he received ineffective assistance of appellate counsel because at the hearing on Heffern's petition, Heffern's appellate counsel testified that he did not argue that the trial court found and weighed an improper aggravating circumstance in determining Heffern's sentence. Counsel believed he might have discussed with Heffern the risk that this court might increase Heffern's sentence. Heffern testified that he and his counsel did not discuss that risk. The post-conviction court entered findings of fact and conclusions thereon denying Heffern's petition. Heffern now appeals the post-conviction court's denial of his petition for post-conviction relief.

## Analysis

[8] Heffern argues that the post-conviction court's denial of his petition is clearly erroneous. "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Post–Conviction Rule 1(5). "When appealing from the denial of post-conviction

relief, the petitioner stands in the position of one appealing from a negative judgment." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We review a post-conviction courts' factual findings under a "clearly erroneous" standard and do not defer to any legal conclusions. *Huddleston v. State*, 951 N.E.2d 277, 280 (Ind. Ct. App. 2011), *trans. denied*. We do not reweigh the evidence or judge the witnesses' credibility and will examine only the probative evidence and reasonable inferences that support the post-conviction court's decision. *Id*. We must determine if the court's findings are sufficient to support the judgment. *Id*.

[9] Heffern contends that his appellate counsel was ineffective because he failed to raise a sentencing argument on direct appeal. "To establish a post-conviction claim alleging the violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish before the post-conviction court the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010). A petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000).

[10] A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). "Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Kubsch*, 934 N.E.2d at 1147. To meet the appropriate test for prejudice, the petitioner must show that there is a

reasonable probability that, but for counsels unprofessional errors, the result of the proceeding would have been different. *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Failure to satisfy either prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006).

[11] "The standard of review for appellate counsel is the same as for trial counsel in that the defendant must show appellate counsel was deficient in his performance and that the deficiency resulted in prejudice." *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). Heffern argues that his appellate counsel failed to raise an issue on appeal, resulting in waiver. To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Id*. "To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are 'clearly stronger' than the raised issues." *Id*. (quoting *Timberlake v. State*, 753 N.E.2d 591, 605-06 (Ind. 2001), *cert. denied*).

[12] "If the analysis under this test demonstrates deficient performance, then we examine whether, 'the issues which . . . appellate counsel failed to raise, would

have been clearly more likely to result in reversal or an order for a new trial.'" *Id.* (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997), *cert. denied*). Further, we must consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance. *Id.* at 1195-96. Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal. *Id.* at 1196. One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id.*

[13] Here, the trial court identified seven aggravating factors at Heffern's sentencing hearing. These factors caused the trial court to impose an additional five years above the advisory sentence on each count and to order the terms to run consecutively for an aggregate sentence of seventy-five years. These aggravating factors included: (1) Heffern had a significant and lengthy criminal record; (2) the heinous nature of the offenses, including the beating, torture, repeated stabbing, and mutilation of the victim's body; (3) Heffern had a lead role in committing the offenses; (4) Heffern assisted in planning the offenses; (5) Heffern lay in wait to commit crimes; (6) Heffern's continued brutality against the victim after the robbery had been completed; and (7) the apparent effort to paint the victim as a perpetrator against children while Heffern himself had committed prior offenses against children.

[14] Heffern contends that appellate counsel was ineffective because he should have argued that the trial court erred in identifying as an aggravator the apparent effort to paint the victim as a perpetrator against children while Heffern himself

had committed prior offenses against children. We do not find that appellate counsel was ineffective. In *Garrett v. State*, our supreme court concluded that "although the trial court erred in finding one improper aggravating circumstance, other valid aggravators remain including a history of delinquent activity as evidenced by Garrett's juvenile record and his admission at trial that he regularly dealt crack cocaine." 714 N.E.2d 618, 623 (Ind. 1999). "A single aggravating circumstance may be sufficient to support an enhanced sentence." *Id*. Even if one of the aggravating factors in Heffern's case was improper, appellate counsel could have reasonably determined that challenging that aggravating factor would not have provided Heffern with any relief because Heffern's sentence was supported by six other aggravating factors.

[15] On direct appeal, Heffern raised four issues which were whether: (1) the trial court properly allowed the State to amend the charging information, changing count 2 from robbery resulting in serious bodily injury to robbery while armed with a deadly weapon; (2) the trial court abused its discretion when it admonished the jury regarding police officers' statements on a videotape and corresponding transcript admitted into evidence but did not give a similar preliminary or final instruction; (3) the evidence was sufficient to support Heffern's convictions; and (4) the entry of judgment of conviction for murder and robbery with a deadly weapon violated Heffern's constitutional right to be free from double jeopardy. Heffern has failed to show that the unraised issue was significant and obvious from the face of the record and that the unraised issue is "clearly stronger" than the raised issues. Thus, his counsel's

performance was not deficient, and he was not prejudiced by the alleged deficient performance.

[16] Given that Heffern has failed to demonstrate he received ineffective assistance of appellate counsel, we conclude that the post-conviction court properly denied Heffern's petition for post-conviction relief.

## Conclusion

[17] The post-conviction court properly denied Heffern's petition for post-conviction relief. We affirm.

[18] Affirmed.

Vaidik, C.J., and Mathias, J., concur.