**Contrice L. CARTER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 02S03–0005–PC–330.**

Supreme Court of Indiana.

Nov. 28, 2000.

---

Susan K. Carpenter, Public Defender of Indiana, Tracy A. Nelson, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Contrice L. Carter pled guilty in the middle of his jury trial. The court took his plea under advisement and scheduled a sentencing hearing. Carter later sought to withdraw his plea, saying he was innocent. He contends that he was entitled to withdraw the plea because the request came before the court formally accepted it. A divided Court of Appeals rejected this contention. *Carter v. State*, 724 N.E.2d 281 (Ind.Ct.App.2000). We grant transfer and affirm.

### Facts and Procedural History

During an argument in Fort Wayne on July 5, 1993, Carter shot and killed Alvinchy Washington. The State charged Carter with murder. On September 7, 1993, Carter's trial began and a jury was empaneled. The court then recessed for depositions related to an alibi defense it had allowed Carter to raise belatedly. Upon learning that the witnesses deposed did not corroborate Carter's version of events, Carter asked his counsel if it was too late to change his plea.

The next day, based upon an agreement with the prosecutor, Carter pled guilty to voluntary manslaughter. He was fully and properly advised of his constitutional rights and the implications of his plea. (R. at 39, 192–99.) He affirmed that the plea was made freely and voluntarily, and without duress. (R. at 201.) He gave a factual

account of the circumstances of the crime.[1] (R. at 202–03.) The court discharged the jury and set a date for sentencing. It deferred formal acceptance of the plea for a month pending review of the pre-sentencing investigation report.[2]

At the sentencing hearing, the trial court asked Carter if he was satisfied with the manner in which he had been represented. Carter had earlier answered the same question affirmatively, in the course of giving his plea. (R. at 201.) At sentencing, however, Carter said:

> Okay, from the beginning, you know what I'm saying, I was telling [my attorney] that I didn't do it right, but you know, when push come to shove and I couldn't prove that I didn't do it, she you know what I'm saying, told me that I should sign a plea bargain right, and she's supposed to be my lawyer, you know what I'm saying, if I'm maintaining my innocence she's supposed to be

---

1. When asked what he did that made him guilty of this offense, Carter responded "I shot somebody." He went on to describe the circumstances as follows:

   > Well, I had went over there . . .. I guess it was his ... some girl that lived over had a problem with one of my cousins or something so I had went over to my Aunt house, you know, with a couple of dudes and her, you know, they was over there with a gun, talking about whether to tell (unintelligible name) to come outside, so I found out where it is, and I went over there to talk to him about it, you know, and first I got out the car and me and him talked, you know, kind of like an argument, heated up, and I was like, you know . . .. I can't recall the exact conversation we had, but you know, to the extent, you know, words like we calling each other names. I was like f——, you know, like, f—— you. He pulled out a gun and I pulled out a gun and I shot him. I seen him run around the building and I just went down to my car and left.

   (R. at 202–03.)

2. During the pre-sentence investigation, Carter told the probation officer, "I am pleading guilty because I cannot prove that I didn't do it." (R. at 46.) The report also stated that "[t]he defendant is maintaining his innocence. He said he only pled guilty to avoid getting 60

pushing with that for me no matter what the outcome could be.

(R. at 210–11.)

The trial judge said, "If this then is to be taken as a motion or a suggestion that the plea of guilty be set aside, I'll deny that request and we will proceed now with sentencing."[3] (R. at 216–17.) The court accepted the plea and sentenced Carter to thirty years in prison in accordance with the plea bargain.

## I. Indiana's Stance on "Best Interest" Pleas

In 1953, this Court held that "a plea of guilty tendered by one who *in the same breath* protests his innocence, or declares he actually does not know whether or not he is guilty, is no plea at all." *Harshman v. State*, 232 Ind. 618, 621, 115 N.E.2d 501, 502 (1953) (emphasis added).[4] A valid guilty plea is a confession of guilt made directly to a judicial officer and necessarily admits the incriminating facts alleged. *Id.* at 620, 115 N.E.2d at 502.[5] A

---

years. He said he only told the judge what he read in the police report." *Id.* This Court held in *Moredock v. State*, 540 N.E.2d 1230, 1231 (Ind.1989) that such protestations of innocence made outside the courtroom do not entitle a prisoner to post-conviction relief. Therefore, these assertions do not affect our analysis.

3. A defendant's failure to submit a verified, written motion to withdraw a guilty plea generally results in waiver of the issue of wrongful denial of the request. *Flowers v. State*, 528 N.E.2d 57, 59 (Ind.1988). However, the issue of waiver is neither presented nor addressed here.

4. Harshman pled guilty to stealing a vehicle, but told the judge he had no recollection of doing so. *Id.* at 620, 115 N.E.2d at 502.

5. The *Harshman* Court called a guilty plea a "judicial confession," a term first used in *Batchelor v. State*, 189 Ind. 69, 125 N.E. 773 (1920). The *Batchelor* Court explained it this way, quoting a treatise:

   > Confessions are divided into two classes, namely, *judicial* and *extra-judicial*. Judicial confessions are those that are made before the magistrate or in court, in the due course of legal proceedings; and it is essential that

defendant who says he did the crime and says he did not do the crime has in effect said nothing, at least nothing to warrant a judge in entering a conviction.

In 1970, the U.S. Supreme Court found no federal constitutional barrier to a court's acceptance of a guilty plea from a defendant who asserts innocence, at least when there is a strong factual basis for the plea. *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). *Alford* explicitly recognized the authority of individual states to refuse to accept guilty pleas that are accompanied by assertions of innocence. *Id.* at 38 n. 11.

Re-examining its own position in light of *Alford*, in 1983 this Court reaffirmed that in Indiana "as a matter of law ... a judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence *at the same time.*" *Ross v. State*, 456 N.E.2d 420, 423 (Ind.1983) (emphasis added).[6]

*Harshman* and *Ross*, therefore, clearly established that an Indiana trial court may not accept a guilty plea that is accompanied by a denial of guilt. The *Harshman-Ross* rule is explicitly contingent, however, upon the protestation of innocence occurring at the same time the defendant attempts to enter the plea. *Harshman*, 115 N.E.2d at 502, 232 Ind. at 621; *Ross*, 456 N.E.2d at 423.

We elaborated on the policy underlying Indiana's rule in *Trueblood v. State*, 587 N.E.2d 105 (Ind.1992). We observed that the *Harshman-Ross* rule serves to increase the reliability of guilty pleas. *Id.* at 107. It also promotes respect for the court system because it prohibits conviction and sentencing without trial if the defendant has admitted no crime to the court. *Id.* Still, as reiterated in *Trueblood*, it "generally applies only to defendants who plead guilty and maintain their innocence *at the same time.*" *Id.* (emphasis added).[7]

---

they be made of the free will of the party, and with full and perfect knowledge of the nature and consequences of the confession. Of this kind are the preliminary examinations, taken in writing by the magistrate, pursuant to statutes; and the plea of guilty made in open court, to an indictment. Either of these is sufficient to found a conviction, even if to be followed by a sentence of death, they being deliberately made, under the deepest solemnities, with the advice of counsel, and the protecting caution and oversight of the judge. Such was the rule of the Roman Law * * * and it may be deemed a rule of universal jurisprudence. *Id.* at 80–81, 125 N.E. 773, 125 N.E. at 777. *Batchelor* was a remarkable case in which this Court early charted its position about the care a court must take in accepting a guilty plea. Batchelor was held in jail at Gary for four days, his frequent requests to consult with his family and his lawyer refused. On the fourth day, he was taken to the jail at Crown Point. On the fifth day, a grand jury indicted him for murder in the first degree and officers brought him to the Lake Criminal Court for arraignment. The trial judge told him he had the right to a lawyer, but did not ask if he wanted one. The judge also told Batchelor that if he pled guilty the court would sentence him in accordance with law, but did not tell him what the sentence could

be. Asked to plead, Batchelor said he was guilty and wished to plead guilty. The next day, the court accepted Batchelor's plea and sentenced him to death. Two days later, Batchelor had had the chance to speak with a lawyer and moved to withdraw the plea. The trial court refused. This Court reversed, holding that Batchelor's right to counsel under Section 13 of the Indiana Bill of Rights had been denied him. Justice Lairy wrote, "The privilege of the presence of counsel upon the trial would be a poor concession to the accused if the right of consultation with such counsel prior to the trial was denied." *Id.* at 77, 125 N.E. at 776 (quoting *People ex rel. Burgess v. Riseley*, 66 How. Pr. 67, 1883 WL 11409 (N.Y.1883)).

6. The *Ross* and *Harshman* cases had more in common than the key issue. The author of the *Ross* opinion had, as a young assistant public defender, represented Mr. Harshman. *Ross*, 456 N.E.2d at 421; *Harshman*, 232 Ind. at 619, 115 N.E.2d at 501. By the time *Ross* was decided thirty years later, Richard M. Givan had moved behind the bench and become Chief Justice of Indiana. Withered, Jerome L., *Hoosier Justice: A History of the Supreme Court of Indiana* 148 (1998).

7. We permitted a deviation from the "same time" rule in *Patton v. State*, 517 N.E.2d 374

There is a substantive difference between a defendant who maintains innocence but asks the court to impose punishment without trial, and one who concedes guilt in one proceeding but contradicts that admission by claiming innocence in a later proceeding. In the former case, the defendant has consistently denied culpability, and has therefore never made the reliable admission of guilt that Indiana requires. In the latter case, a defendant under oath has told the court two opposing stories, both of which cannot be true.

An admission of guilt that is later retracted may nonetheless be reliable. *See Trueblood,* 587 N.E.2d at 109–10. Admissions of guilt and assertions of innocence come in many shades of gray, and the trial judge is best situated to assess the reliability of each. A credible admission of guilt, contradicted at a later date by a general and unpersuasive assertion of innocence, may well be adequate for entering a conviction.

Nevertheless, Carter asks this Court to narrow the trial court's normal discretionary authority, which is grounded in both statute and precedent, and to give defendants in effect an absolute right to withdraw guilty pleas prior to formal acceptance. The policy considerations underlying Indiana's prohibition on *Alford* pleas do not require this result. Fur-thermore, a rule that would afford defendants an absolute right to retract a plea before its formal acceptance would be an all-too-handy tool for deferring trial (and halting a trial in progress that was not going well for the defendant) and would do little to enhance public respect for the courts.[8]

Defendants who make impulsive or ill-advised plea decisions and regret their actions upon later reflection are adequately protected by the right to request permission to withdraw a plea and to appeal a conviction if permission is denied. *See* Ind.Code Ann. § 35–35–1–4(b), (e) (West 1998).

## II. A Case on Point

Given Indiana's long history on guilty pleas and claims of innocence, it is not surprising that this Court has previously heard a case just like Carter's. The appeal in *Owens v. State,* 426 N.E.2d 372 (Ind.1981), involved both a similar factual scenario and a comparable legal challenge. Defendant Owens pled guilty to murder, two counts of armed robbery, and attempted robbery after he was fully advised of his constitutional and statutory rights. *Id.* at 372–73. Owens conceded when he entered his plea that the State's factual assertions were substantially correct. *Id.* at 374. The trial court took the plea under

(Ind.1987), but we observed in *Trueblood* that such deviations were not automatic even in capital cases. *Trueblood,* 587 N.E.2d at 110. Decided five years earlier, *Patton* held that a trial court abuses its discretion if it refuses to allow a defendant who asserts innocence at a sentencing hearing in a capital case to withdraw a previously accepted guilty plea. *Patton,* 517 N.E.2d at 376. In *Trueblood,* the defendant pled guilty after his trial commenced and several witnesses had given damaging testimony. *Trueblood,* 587 N.E.2d at 109. After the jury was released, the defendant asserted innocence and sought unsuccessfully to change his plea. *Id.* at 107. This Court held that the trial court had not abused its discretion in denying the plea withdrawal request and imposing a death sentence, given the strong indications that the defendant truthfully admitted his guilt and later sought to retract the admission in an effort to manipulate the system. *Id.* at 109–10.

8. The result Carter seeks would raise additional concerns beyond the potential for manipulation. It could create an inequity among similarly situated defendants, and a perverse incentive for judges. Assume that two defendants plead guilty in different courts. One judge immediately accepts the plea and the other opts to defer formal acceptance until the sentencing hearing, pending review of a pre-sentencing investigation report. One defendant would have an unqualified right to nullify the plea prior to its acceptance days or weeks later; the other would not have a similar opportunity. In addition, judges might be deterred from taking the reasonable and prudent step of reviewing pre-sentence investigation reports before formally accepting pleas, to avoid the risk of defen-

advisement and scheduled sentencing for three weeks later, contingent upon its acceptance of the plea. *Id.*

At the sentencing hearing, before the trial court formally accepted the plea, Owens orally asked permission to withdraw the plea. *Id.* Owens' counsel indicated to the court that her client now professed his innocence. *Id.* The court denied the request to withdraw the plea, and then formally accepted the plea. *Id.* at 375. Owens was sentenced to forty years for the murder and to lesser concurrent terms for the other offenses. *Id.* at 372–73.

This Court unanimously held that, under both statute and precedent, "[t]he question whether a defendant should be permitted to withdraw a guilty plea, once it has been formally entered, is a matter addressed to the sound discretion of the trial court." *Id* . at 375. Applying this standard, we held that the trial court did not abuse its discretion in denying Owens' request. In support of this conclusion, this Court particularly noted that the protestation of innocence at the sentencing hearing was general in nature. *Id.*

 Thus, we established nearly two decades ago that court permission is required to withdraw a guilty plea, even when the plea has not been accepted and the withdrawal request is based upon a protestation of innocence. *Id.* at 375. Denial is reviewable under an abuse of discretion standard. *Id.* Conflicting authority in the Court of Appeals, *Brooks v. State*, 577 N.E.2d 980 (Ind.Ct.App.1991),[9] served as a basis for the dissent in the present appeal.[10] *Brooks* is hereby disapproved.

### III. Applying the Standard

■ The facts presented here clearly demonstrate that the trial court did not

abuse its discretion. In *Owens*, the defendant pled guilty and provided a factual foundation for that plea by admitting that the allegations against him were true. *Owens*, 426 N.E.2d at 374. Three weeks later, at his sentencing hearing, Owens asserted his innocence in a general manner and asked to withdraw his guilty plea. *Id.* at 374–75. This Court found no abuse of discretion in the denial of the request. *Id.* at 375.

The circumstances in this case were very similar. In fact, Carter's admission of guilt was more detailed. (R. at 202–03.) Also, in evaluating Carter's assertion of innocence and implied request to withdraw his guilty plea, the trial court specifically noted that Carter had been "relaxed and quite candid" at the time he entered that plea and provided its factual foundation. (R. at 216.) The trial court did not err in denying Carter permission to withdraw his guilty plea.

### Conclusion

We grant transfer and summarily affirm the opinion of the Court of Appeals. Ind. Appellate Rule 11(B)(3). The judgment of the trial court is thus affirmed.

DICKSON, SULLIVAN, and BOEHM, JJ., concur.

RUCKER, J., concurs in result.

dants retracting reliable pleas solely to prolong the adjudicative process.

**9.** The court in *Brooks* held, based on facts similar to the case presented, that acceptance at a sentencing hearing of a previously entered guilty plea was reversible error because the defendant protested his innocence prior to

the acceptance. *Brooks*, 577 N.E.2d at 981. *Brooks* was erroneous when it was written, in conflict with *Owens*.

**10.** *Carter v. State*, 724 N.E.2d ,281, 286 (Ind. Ct.App.2000) (Sullivan, J., dissenting), transfer granted, opinion vacated by *Carter v. State*, 735 N.E.2d 234 (Ind. May 24, 2000).