## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 07 2017, 5:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tracy J. Konsdorf,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 7, 2017

Court of Appeals Case No.
79A04-1704-CR-881

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1603-F5-32

**Baker, Judge.**

[1] Tracy Konsdorf pleaded guilty to Level 5 Felony Sexual Misconduct with a Minor.[1] She appeals, arguing that 1) her guilty plea is invalid; 2) her sentence is erroneous and inappropriate in light of the nature of the offense and her character; and 3) certain probation conditions are overly broad. Finding no error with her guilty plea or her sentence, but that two of her probation conditions are overly broad, we affirm in part, reverse in part, and remand with instructions.

[2] We find that 1) the trial court did not err by accepting Konsdorf's guilty plea; 2) the trial court did not err by denying Konsdorf's motion to withdraw her guilty plea; 3) the trial court did not err by not advising Konsdorf about the requirement to register as a sex offender; 4) Konsdorf's sentence was not inappropriate in light of the nature of the offense and her character; and 5) the trial court did not err by not considering certain factors to be mitigating factors; but that 6) two of Konsdorf's probation conditions are overly broad. We affirm in part, reverse in part, and remand with instructions.

## Facts[2]

[3] Forty-eight-year-old Konsdorf worked as a school bus driver for the Tippecanoe County School Corporation. On or around October 16, 2015, Konsdorf created

---

[1] Ind. Code § 35-42-4-9(b)(1).

[2] We remind appellant's counsel that Indiana Appellate Rule 46(A)(6) requires that briefs have a statement of facts section that should contain only relevant facts "stated in accordance with the standard of review appropriate to the judgment or order being appealed." Here, appellant's statement of facts section omits all

a contact entry in her cell phone for the victim, a fourteen-year-old girl. On or around December 8, 2015, Konsdorf and the victim began sending text messages to each other.

[4] On February 11, 2016, Konsdorf engaged in a hug with the victim for approximately one minute; Konsdorf also sat in the driver's seat of the bus while the victim laid on her, and she "smack[ed]" the victim's rear end with her hand. Appellant's App. Vol. IV p. 8. The next day, February 12, 2016, Konsdorf again sat in the driver's seat of the bus while the victim sat in her lap for approximately twelve minutes. In the afternoon of that same day, the victim kissed Konsdorf on the top of her head before the victim exited the bus. On February 16, 2016, Konsdorf and the victim "lean[ed]" on each other and hugged before the victim exited the bus. *Id.* On February 22, 2016, Konsdorf and the victim hugged near the driver's seat for approximately one minute as students walked past them to exit the bus, and they hugged a second time after most of the students had exited the bus.

[5] On February 23, 2016, Konsdorf and the victim entered the bus together before the start of Konsdorf's bus route. That evening, Konsdorf sent the victim the following message through Facebook:

> I can't tell you what to do or feel. But I know you have feelings and emotions and scared. Your scared cause somebody actually

---

facts related to the crime to which Konsdorf pleaded guilty and is argumentative regarding Konsdorf's sentence. Despite this failure to follow Rule 46(A)(6), we will still consider Konsdorf's appeal.

told you what you never thought you'd hear. Well I said it and meant it. You wanna run go for it but remember you have to face me everyday and you can't do that without breaking. You were happy when we both got honest I know I was. Today was a great day. Just having you close in the morning is wonderful. Sitting on your lap wasn't half bad either. Last night with your little snapchats well let's just say I had wonderful dreams. Sry Just know this is not easy for me either but I'm still here. You

Appellant's App. Vol. IV p. 7 (spelling and grammar original).

[6] On February 24, 2016, Konsdorf asked the victim to place something over the cameras at the front and back of the bus. Konsdorf placed her hand on the victim's back, near her waistline, and pushed her toward the rear of the bus. She then asked the victim, "you want me don't you." *Id.* at 9. That evening, the victim sent Konsdorf a text message stating, "I felt everything. The kiss was good. I just couldn't let it happen again. I'm afraid someone will see. That can't happen." *Id.* at 7.

[7] Between February 24 and 29, 2016, Konsdorf and the victim exchanged 737 text messages with each other. Between February 27 and 29, 2016, Konsdorf searched the following phrases online:

- "falling in love with someone you ger"
- "falling in love with someone you can't have"
- "older wiman younger wiman"
- "dating a 14 year old"
- "Do you think it's normal for a 26-year-old guy to date a 14-year-old girl? Why?"
- "14 year old dating 28 year old"
- "Is it wrong for a 14 year old and a 28 year old to date?"

- "women dating younger women" and
- "tsc[3] investigations."

Appellant's App. Vol. IV p. 11 (spelling and grammar original).

[8] On February 26, 2016, Konsdorf asked the victim what she had told people about them. On February 28, 2016, Konsdorf wrote a note stating

> Ok why do u it? Heartbreaker it is. USS [victim] leaves quite a trail. Sometimes your flirting can and does hurt people's feelings. Kinda sad it got me I guarantee we will have tough times I guarantee that but never even got that chance.

*Id.* at 10 (spelling and grammar original). On February 29, 2016, Konsdorf sent the victim the following messages: "Better stay quiet. Please don't bad mouth me. Remember I do know people. They keep me informed. That's all I have to say[]" and "This is between you and I only." *Id.* at 7. That same night, Konsdorf wrote on Facebook, "I got played by a 14." *Id.*

[9] On March 1, 2016, an employee of the Tippecanoe School Corporation met with the Tippecanoe County Sheriff's Office. The employee had been looking into a harassment complaint unrelated to the instant case when the employee came across the video involving Konsdorf and the victim. On March 4, 2016, the State charged Konsdorf with Level 5 felony sexual misconduct with a minor. On August 12, 2016, Konsdorf pleaded guilty to the charge without a

---

[3] "TSC" stands for "Tippecanoe School Corporation."

plea agreement. During the guilty plea hearing, Konsdorf stated that she understood that by pleading guilty, she was admitting that she committed the crime with which she was charged and understood that she would be judged and sentenced without a trial; that she understood the penalty range for the crime; that she did not receive any promises and was not given anything of value in order to plead guilty; that she was not forced, threatened, or put in fear regarding her guilty plea; and that she pleaded guilty as a result of her own free choice and decision. The following exchange then took place:

> The Court: Then as to Count One (1); Information of sexual misconduct with a minor, a Level Five (5) Felony, how do you plead? Guilty? Or Not Guilty?
>
> The Defendant: Guilty.
>
> ***
>
> Defense Counsel: Tracy, on February 24, 2016, were you here in Tippecanoe County?
>
> The Defendant: Yes.
>
> Defense Counsel: And were you working that day?
>
> The Defendant: Yes.
>
> Defense Counsel: And on that day, did you have contact with the Victim in this matter?

The Defendant:  Yes.

Defense Counsel:  And to the best of your knowledge, what is the Victim's age?

The Defendant:  Fourteen (14).

Defense Counsel:  Ok.  And the contact that you had with her, was there-did it involve kissing?

The Defendant:  Yes.

Defense Counsel:  Ok.  Was there-would both-was there also perhaps touching?

The Defendant:  No.

Defense Counsel:  No touching?  Just the kissing?

The Defendant:  Yes.

Defense Counsel:  Was it-was that kissing of a-with an intention to satisfy your sexual desires?

The Defendant:  No.

Defense Counsel:  What was the intention of it then?

The Court:  Let's go off the record for a minute and I will let you talk to your client.

Defense Counsel:  Thank you Judge.

Tr. p. 9-11. When defense counsel resumed questioning Konsdorf, Konsdorf specifically admitted to all factual allegations of the charge. During the State's cross-examination, the following exchange took place:

> The State: You agree that all of the material allegations as set forth in Count One (1) are true? Is that correct?
>
> The Defendant: Yes. I am sorry.
>
> The State: Ok.

*Id.* at 13. The trial court found that a factual basis existed for the guilty plea and set the matter for a sentencing hearing to take place on September 9, 2016.

[10] On the morning of the scheduled sentencing hearing, Konsdorf received and was dissatisfied with the pre-sentence investigation report (PSR) because she believed that "the State was going to make a recommendation that was less than what their recommendation is going to be today." *Id.* at 18. When Konsdorf pointed this out to the trial court, the trial court stated that there was no plea agreement in this case. Konsdorf then indicated that she wanted to withdraw her guilty plea, and the trial court told her that the motion had to be in writing.

[11] On September 22, 2016, Konsdorf filed a motion to withdraw her guilty plea, arguing that she had pleaded guilty pursuant to an oral agreement with the State, that her trial counsel was ineffective, and that a plea to a felony had to be in writing rather than by oral agreement. On September 27, 2016, the State

filed a response to Konsdorf's motion. A hearing on Konsdorf's motion took place on October 14, 2016, during which the trial court informed Konsdorf that her motion to withdraw the guilty plea was not properly filed because she had not signed her motion. The trial court nonetheless proceeded with the hearing. Konsdorf testified, admitting that she had pleaded open without a plea agreement; that she had been advised of the penalty associated with her offense; that she had been asked by the trial court whether she was forced, threatened, or promised anything of value in return for her guilty plea; and that she had admitted guilt at her guilty plea hearing. At the conclusion of the hearing, the trial court told Konsdorf that she had seven days in which to file a proper motion to withdraw her guilty plea and then the trial court would issue an order.

[12] On November 4, 2016, Konsdorf filed a second motion to withdraw her guilty plea. In this motion, she alleged that she received the ineffective assistance of counsel because she was advised that she would not be sentenced to serve executed time, was not presented with a written plea offer, and was not able to obtain answers to her questions from her attorney. On November 10, 2016, the State filed a response to Konsdorf's motion. A hearing on Konsdorf's second motion took place on December 21, 2016, during which Konsdorf admitted that she had discussed pleading guilty with her attorney, that she had admitted all of the material allegations of her offense, that she would not be withdrawing her guilty plea if probation had not recommended jail time in the PSR, and that she had been informed at her guilty plea hearing of the consequences of pleading

guilty. The trial court took the matter under advisement, and on February 1, 2017, issued an order denying Konsdorf's motion to withdraw her guilty plea, finding that Konsdorf failed to present specific facts to justify the withdrawal of her guilty plea.

At Konsdorf's March 20, 2017, sentencing hearing, the trial court sentenced her to four years, with one year executed and three years suspended. Of the three years suspended, the trial court ordered Konsdorf to serve two years of supervised probation and one year of community corrections. In the trial court's written sentencing order, the trial court found the following aggravating circumstances: 1) Konsdorf's position of trust, and 2) the fact that Konsdorf was grooming the victim. The trial court found the following mitigating circumstances: 1) Konsdorf pleaded guilty; 2) Konsdorf has no criminal history; 3) Konsdorf has the support of family and friends; and 4) Konsdorf has a history of employment. Konsdorf now appeals.

## Discussion and Decision

### I. Guilty Plea

#### A. Validity of Plea

##### 1. Maintaining Innocence

Konsdorf first challenges the validity of her guilty plea, arguing that the trial court erred by accepting her guilty plea because she maintained her innocence and pleaded guilty at the same time.

[15] Initially, we note that Konsdorf did not raise this issue in either of her motions to withdraw her guilty plea. As a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *Pitman v. Pitman*, 717 N.E.2d 627, 633 (Ind. Ct. App. 1999). Therefore, her argument is waived. Moreover, at her guilty plea hearing, Konsdorf stated that she understood she was waiving her right to appeal her conviction. *See Tumulty v. State*, 666 N.E.2d 394, 395 (Ind. 1996) ("One consequence of pleading guilty is restriction of the ability to challenge the conviction on direct appeal."). Waiver notwithstanding, we will still discuss Konsdorf's argument.

[16] "A valid guilty plea is a confession of guilt made directly to a judicial officer and necessarily admits the incriminating facts alleged." *Carter v. State*, 739 N.E.2d 126, 128 (Ind. 2000). A trial court in Indiana "may not accept a guilty plea that is accompanied by a denial of guilt." *Id.* at 129. This rule is "explicitly contingent, however, upon the protestation of innocence occurring at the same time the defendant attempts to enter the plea." *Id.* A trial court may "accept a guilty plea from a defendant who pleads guilty in open court, but later protests his innocence." *Johnson v. State*, 734 N.E.2d 242, 245 (Ind. 2000). "Admissions of guilt and assertions of innocence come in many shades of gray, and the trial judge is best situated to assess the reliability of each." *Carter*, 739 N.E.2d at 130.

[17] At Konsdorf's guilty plea hearing, during defense counsel's questioning, Konsdorf initially admitted that she had contact with the victim, that the victim

was fourteen years old, and that the contact involved kissing; she denied that the contact involved touching or that the kissing was with an intention to satisfy her sexual desires. The trial court allowed defense counsel to confer with Konsdorf off the record, after which defense counsel explained that Konsdorf was "obviously nervous." Tr. p. 12. Konsdorf then admitted that on February 24, 2016, the victim was fourteen years old, that Konsdorf is forty-eight years old, that she had contact with the victim, that the contact involved Konsdorf kissing and touching the victim, and that the contact was with the intention to either satisfy her desire or that of the victim. When the State asked whether Konsdorf agreed with all of the material allegations set forth in the charge, she replied affirmatively.

[18] At no time during the hearing did Konsdorf state that she was innocent of the crime, let alone maintain a protestation of innocence. Even if she initially denied that the contact involved touching or that the kissing was with an intention to satisfy her sexual desires, she nearly immediately thereafter admitted to all of the elements of the charge against her. We do not find that her brief denials, followed so quickly by a full admission, constituted a protestation of innocence.

[19] Moreover, Konsdorf did not assert her innocence at her subsequent hearings on her motions to withdraw her guilty plea. At the first hearing on Konsdorf's motion to withdraw her guilty plea, when the State asked her whether she had admitted guilt at her guilty plea hearing, she replied affirmatively. Tr. p. 26. At the second hearing on Konsdorf's motion to withdraw her guilty plea, she

testified that if the probation department had not recommended jail time, she would not be trying to withdraw her guilty plea. *Id.* at 45. In addition, before sentencing, Konsdorf wrote a letter to the trial court in which she stated that:

> . . . I gave [the victim] a hug and kissed her, and patted her.

> I admit that I did a stupid thing by exchanging text messages with her. I also know that I shouldn't have hugged her, kissed her or touched her as that wasn't a smart thing to do.

Appellant's App. Vol. III p. 14. In other words, Konsdorf acknowledged in her letter to the trial court that she touched, hugged, and kissed the victim—the exact opposite of declaring or maintaining innocence.

[20] In sum, defense counsel explained that Konsdorf's initial answers in the negative at the guilty plea hearing to counsel's questions of whether her contact with the victim involved touching and whether the kissing was with an intention to satisfy Konsdorf's sexual desires were the result of her nervousness at being in court. There is no evidence that Konsdorf made, let alone maintained, an assertion of innocence. The trial court, which had the opportunity to interact with and observe Konsdorf, is in the best position to assess the reliability of Konsdorf's admission of guilt. Under these circumstances, we find no error in the trial court's acceptance of Konsdorf's guilty plea.

# 2. Registration as a Sex Offender

[21]    Konsdorf contends that the trial court committed fundamental error by not advising her during her guilty plea hearing that she would be required to register as a sex offender. Again we note that Konsdorf did not raise this issue to the trial court and therefore waived it on appeal. She attempts to circumvent this waiver by claiming fundamental error. Fundamental error is available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible. *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008).

[22]    Indiana Code section 35-35-1-2 requires a trial court to ensure that a defendant pleading guilty understands and is aware of certain matters. The statute specifies in relevant part that:

> (a) The court shall not accept a plea of guilty or guilty but mentally ill at the time of the crime without first determining that the defendant:
>
> > (1) understands the nature of the charge against the defendant;
> >
> > (2) has been informed that by the defendant's plea the defendant waives the defendant's rights to:
> >
> > > (A) a public and speedy trial by jury;

(B) confront and cross-examine the witnesses against the defendant;

(C) have compulsory process for obtaining witnesses in the defendant's favor; and

(D) require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself or herself; [and]

(3) has been informed of the maximum possible sentence and minimum sentence for the crime charged and any possible increased sentence by reason of the fact of a prior conviction or convictions, and any possibility of the imposition of consecutive sentences[.]

***

(c) Any variance from the requirements of this section that does not violate a constitutional right of the defendant is not a basis for setting aside a plea of guilty.

[23] A defendant "who pleads guilty need not be advised that the conviction might have adverse but future collateral consequences." *Gillespie v. State*, 736 N.E.2d 770, 775 (Ind. Ct. App. 2000). Advisement on collateral consequences is not required because "the immediate conviction is the sole concern." *Id.*

[24] The statute governing a trial court's assessment of a defendant's understanding of the effects of a guilty plea makes no mention of collateral consequences. Konsdorf points to no authority that supports her argument that a trial court's

failure to advise her about her future requirement to register as a sex offender is error, nor do we find any. Further, Konsdorf has not alleged that had she known of the possibility of registering as a sex offender, she would have changed her decision to plead guilty. *See Stockey v. State*, 508 N.E.2d 793, 795 (Ind. 1987) (finding that the defendant did not show that he would have changed his decision to plead guilty had he known of the possibility of consecutive sentences). The trial court did not err in this regard.

## B. Withdrawal of Guilty Plea

Konsdorf next argues that the trial court erred by denying her motion to withdraw her guilty plea because her plea was not knowingly and voluntarily made.

After a guilty plea is entered but before sentence is imposed, a defendant may move to withdraw her guilty plea for any fair and just reason unless the State has been substantially prejudiced by reliance upon the plea. Ind. Code § 35-35-1-4(b). The trial court shall grant the motion to withdraw if the defendant proves, by a preponderance of the evidence, that it is necessary to correct a manifest injustice. *Id.* Absent such a showing, the decision to grant or deny the motion rests soundly in the discretion of the trial court. *Id.*

As a general matter, we will not second-guess a trial court's evaluation of the facts and circumstances because the trial court "is in a better position to weigh evidence, assess the credibility of witnesses, and draw inferences." *Moshenek v. State*, 868 N.E.2d 419, 424 (Ind. 2007). A trial court's ruling on a motion to

withdraw a guilty plea arrives in this Court with a presumption in favor of the ruling. *Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001).

[28] First, we must examine the record of the guilty plea hearing to determine whether Konsdorf's plea was knowing and voluntary. Here, Konsdorf was clearly advised by the trial court of her rights and the information required by Indiana Code section 35-35-1-2. The trial court went step by step through the charge, its penalty range, the rights Konsdorf would give up by pleading guilty, and the fact that Konsdorf was of sound mind. The trial court also determined that Konsdorf's plea was free from threats, coercion, or promises of leniency, and that her plea was of her own free choice and decision. At each step, Konsdorf assured the trial court that she understood her rights, the effect of her plea, and the sentencing range she faced if she pleaded guilty.

[29] Konsdorf attempts to avoid the effect of this lengthy discussion with the trial court by emphasizing that she was confused during the guilty plea hearing and that she pleaded guilty because she thought she had an agreement with the State that did not include an executed sentence. As to Konsdorf's confusion during the guilty plea hearing, as discussed above, the trial court asked questions to establish that Konsdorf understood the consequences of her guilty plea, including the sentencing range for a Level 5 felony. Konsdorf gave no indication that she was unclear about the charge, her potential sentence following her guilty plea, or any other effect of her plea.

As to whether an agreement existed, the record is devoid of evidence of an actual agreement or even the promise of one. At the September 9, 2016, sentencing hearing, the following exchange took place:

> Defense Counsel: . . . I went over [the PSR] with my Client this morning and the recommendation by Probation is outside of what the intended meeting of the minds was between my client and what the agreement was.
>
> The Court: There was no agreement. Right?
>
> Defense Counsel: Correct Judge. . . .

Tr. p. 17. Thus, no actual plea agreement existed between Konsdorf and the State. And although Konsdorf argues on appeal that the trial court should have questioned the State about defense counsel's references to the State's sentencing recommendations, it is the defendant, not the State, who bears the burden of showing that a withdrawal of a guilty plea is necessary. I.C. § 35-35-1-4(b). In short, the record shows that Konsdorf pleaded guilty without an actual agreement.

Finally, Konsdorf contends that withdrawal of her guilty plea is necessary to correct a manifest injustice in part because she received ineffective assistance from her first trial counsel and a plea to a felony must be in writing. Konsdorf fails to develop any cogent argument regarding her ineffective assistance claim; moreover, at the December 21, 2016, hearing on her motion to withdraw her guilty plea, her second trial counsel stated that a poor connection and poor

understanding between Konsdorf and her first trial counsel was more likely than ineffective assistance of counsel. As for any statutory requirement that a plea agreement to a felony must be in writing, we note again that Konsdorf pleaded guilty without the benefit of any plea agreement. Therefore, any such requirement is not relevant to her argument.

[32] Under these circumstances, we find no error in the trial court's conclusion that Konsdorf's guilty plea was knowingly and voluntarily made or that Konsdorf failed to prove a manifest injustice by a preponderance of the evidence, or in its denial of her motion to withdraw her guilty plea.

# II. Sentence

## A. Mitigating Factors

[33] Konsdorf argues that the trial court overlooked three mitigating factors: 1) she was unlikely to commit this offense again; 2) her incarceration would result in undue hardship for her family; and 3) her offense was not the most egregious case of sexual misconduct.

[34] Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g on other grounds at* 875 N.E.2d 218. A trial court may err in its decision if it is clearly against the logic and effect of the facts and circumstances before the court. *Id.* A trial court may err by finding aggravating or mitigating factors that are not supported by the record, by omitting factors that are clearly supported by the record and advanced for consideration, or by finding factors that are improper

as a matter of law. *Id.* at 490–91. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 493.

[35] As to whether Konsdorf is unlikely to commit this offense again, the trial court noted that Konsdorf did not seem to acknowledge the seriousness of her crime. The trial court stated that "I am not sure she truly accepts responsibility for her acts," noting that in her statement of allocution to the trial court, the first group of people to whom she apologized were her family and friends, rather than to the victim. Tr. p. 115. The trial court also noted that, although Konsdorf may not have lied directly to friends about her actions, she had not been completely honest about everything that had transpired. The trial court did not err by not finding Konsdorf unlikely to commit this offense again to be a mitigating factor.

[36] As to the undue hardship that Konsdorf's family might endure during Konsdorf's incarceration, the trial court did consider the impact of her crime on her mother and her son. Regarding Konsdorf's son, who is nineteen years old and lives in a different state, the trial court observed that at least one witness that Konsdorf presented during her sentencing hearing considered Konsdorf's son to be the victim in this case. The trial court stated

> Who is affected more by all of this? Who is affected more? The selfish acts of the Defendant have affected not only the true Victim of this crime, but has also resulted or could result in, I should say, in affecting the lives of others including the son. . . . Frankly I am appalled at the attempts to place the child of

[Konsdorf] above the Victim of the Defendant's acts. It's not to say that I don't feel for the son. I couldn't imagine how I would feel or how my eighteen (18) year old son would feel if his mother had been convicted of a crime such as this. I would be depressed and I am sure my son would.

*Id.* at 114. Thus, the trial court did consider the impact that Konsdorf's incarceration would have on her son but rejected it as a mitigating factor.

[37] Regarding Konsdorf's mother, who is sixty-eight years old, Konsdorf did not present evidence to show that her mother would suffer an undue hardship beyond the normal hardship created by any incarceration. Although Konsdorf's mother lives with her and relies on Konsdorf for some financial support, Konsdorf's mother has been employed in the past, is looking for a job, and receives Social Security. The trial court did not err by not finding any undue hardship suffered by Konsdorf's family to be a mitigating factor.

[38] Konsdorf also contends that the trial court erred by not finding as a mitigating factor that Konsdorf's offense was not the most egregious case of sexual misconduct. She contends that there was no evidence of sexual intercourse or other physical harm. But as the State points out, had Konsdorf engaged in sexual intercourse or physically injured the victim, those acts would have constituted different criminal offenses rather than make the offense of Level 5 felony sexual misconduct with a minor more egregious.

[39] Further, the trial court did find this offense to be egregious because Konsdorf took advantage of her position of trust as a school bus driver and because she

groomed the victim over a period of time. The trial court found that her offense was egregious also because it was "[w]ell planned. Covering two (2) cameras. Covering two (2) cameras. Two (2) cameras which would show that which was going on." *Id.* The trial court additionally stated that "I am sorry I keep going back to these cameras being covered. You are only going to do that if you know that you are going to be trying to do something that you know you are not supposed to be doing." *Id.* at 115. Konsdorf planned her actions and was well aware that her actions were inappropriate. Her argument regarding this factor is unavailing.

## B. Appropriateness of Sentence

[40] Konsdorf next contends that her sentence is inappropriate in light of the nature of the offense and her character.

[41] Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence. . . . " *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[42] Konsdorf pleaded guilty to Level 5 felony sexual misconduct with a minor. She faced a term of one to six years, with an advisory sentence of three years. Ind.

Code § 35-50-2-6(b). Konsdorf received a sentence of four years, with one year executed and three years suspended. Of the three years suspended, the trial court ordered Konsdorf to serve two years of supervised probation and one year of community corrections.

[43] As for the nature of the offense, Konsdorf took advantage of the position of trust she had as a school bus driver to form an inappropriate relationship with a young teenage girl. Over the course of several months, Konsdorf communicated with the victim through text messages and Facebook messages. This communication ultimately led to physical contact, including hugging, patting the victim's rear end, the victim sitting in Konsdorf's lap, and kissing. Following some physical contact, Konsdorf sent the victim a message in which she stated that the victim could "run" but that she has to face Konsdorf every day and that Konsdorf had "wonderful dreams" after the victim sent her Snapchat messages. Appellant's App. Vol. IV p. 7. After the victim expressed concern about their relationship, Konsdorf told her that she "[b]etter stay quiet." *Id.*

[44] Konsdorf knew that her relationship with the victim was inappropriate, as evidenced by her internet searches that included "Do you think it's normal for a 26-year-old guy to date a 14-year-old girl"; "Is it wrong for a 14 year old and a 28 year old to date"; and "tsc investigations." *Id.* at 11. Nonetheless, she pursued the relationship, taking steps, such as having the victim cover up two cameras on the school bus, to avoid detection.

[45] As for Konsdorf's character, Konsdorf offers as evidence of her character that she pleaded guilty, has no criminal history, and has a history of employment. We note, however, that Konsdorf used her job as a school bus driver to commit this offense. Further, Konsdorf wrote on Facebook that "I got played by a 14." Appellant's App. Vol. IV p. 7. This statement suggests that Konsdorf considered the teenage victim, rather than herself, to be accountable for the interactions between them.

[46] Given the nature of her offense and Konsdorf's character, we do not find the sentence imposed by the trial court to be inappropriate.

## III. Probation Conditions

[47] Finally, Konsdorf argues that certain probation conditions are overly broad. "Probation is a criminal sanction where a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment." *Bratcher v. State*, 999 N.E.2d 864, 873 (Ind. Ct. App. 2013). A trial court has broad discretion to impose conditions of probation. *Hevner v. State*, 919 N.E.2d 109, 113 (Ind. 2010). The court's discretion is limited by the principle that the conditions imposed on the defendant must be reasonably related to the treatment of the defendant and the protection of public safety. *Bratcher*, 999 N.E.2d at 873. We will not set aside conditions of probation unless the conditions are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Patton v. State*, 990 N.E.2d 511, 514 (Ind. Ct. App. 2013).

When a defendant challenges a probationary condition because it allegedly unduly intrudes on a constitutional right, we evaluate that claim by balancing the following factors: 1) the purpose to be served by probation; 2) the extent to which constitutional rights enjoyed by law-abiding citizens should be enjoyed by probationers; and 3) the legitimate needs of law enforcement. *Id.*

## A. Businesses That Sell Sexual Devices or Aids

Konsdorf first challenges her probation condition that prohibits her from visiting businesses that sell sexual devices or aids. The condition states:

> 12. You shall not possess obscene matter as defined by IC 35-49-2-1 or child pornography as defined in 18 U.S.C. § 2256(8), including but not limited to: videos, magazines, books, DVD's and material downloaded from the Internet. You shall not visit strip clubs, adult bookstores, motels specifically operated for sexual encounters, peep shows, bars where partially nude or exotic dancers perform, or businesses that sell sexual devices or aids.

Appellant's App. Vol. II p. 44-45.

Konsdorf argues that the prohibition is not narrowly tailored to sexually explicit content involving children and that the prohibition on visiting businesses that sell "sexual devices or aids" is overly broad because it would extend to drug stores. The State concedes that the language pertaining to businesses that sell sexual devices or aids may be overly broad and that remand to the trial court may be appropriate. The State also suggests, however, that because the other language in the condition prohibits Konsdorf from visiting businesses of a

sexual nature, the provision regarding businesses that sell sexual devices or aids clearly intends to put Konsdorf on notice as to the types of businesses she cannot visit.

[51] Regarding whether the prohibition is narrowly tailored to sexually explicit content involving children, we disagree with Konsdorf's implication that it need be. She does not cite any authority in support of her argument that those convicted of sex crimes against minors should be prohibited only from accessing sexually explicit content involving children. Further, this condition is tailored to Konsdorf's offense, which was sexual in nature. We do not see the prohibition as a whole as overly broad.

[52] Regarding the specific provision prohibiting her from visiting "businesses that sell sexual devices or aids," however, we agree with Konsdorf that the provision is overly broad and we remand for clarification of the prohibition. *See Collins v. State*, 911 N.E.2d 700, 714 (Ind. Ct. App. 2009) (finding that a probation condition prohibiting defendant from visiting businesses that sell sexual devices or aids was an unfairly broad prohibition).

## B. Sexual Relationship

[53] Konsdorf next challenges the probation condition that prohibits her from engaging in a sexual relationship with any person who has children under the age of sixteen unless given permission by the court and her treatment provider. The condition states:

17.  You shall not engage in a sexual relationship with any person who has children under the age of 16 years unless given permission by the court and your treatment provider.

Appellant's App. Vol. II p. 46.

[54]  Konsdorf argues that this condition is overly broad because it could apply to any person who has a child under sixteen but who is not the custodial parent and whose child does not reside with that person, and because it could apply to any person who has a child under sixteen but who has no contact with that child.  The State contends that this condition does not prohibit Konsdorf from engaging in sexual activity with an adult who has a child under the age of sixteen but instead only requires her to obtain permission before engaging in such a relationship.  The State further contends that this condition serves to protect the public by ensuring that appropriate safeguards are put in place to limit the risk of Konsdorf reoffending.

[55]  Considering the wide range of implications that this probation condition includes, we agree with Konsdorf that this probation condition is overly broad.  Initially, we note that other probation conditions involving a defendant's relationships require the defendant to notify a probation officer of a dating, intimate, or sexual relationship so that a probation department can investigate the situation and determine whether there is a risk that children might be exposed to contact with the defendant.  *See, e.g.*, *Smith v. State*, 779 N.E.2d 111, 117 (Ind. Ct. App. 2002).  Our court has upheld these conditions as reasonably related to the goal of protecting children because "it is not uncommon that child

molesters gain access to their victims through romantic relationships with adult relatives of the child." *Id.*

[56] Konsdorf's probation condition, however, requires more of her—rather than notifying her probation officer of a relationship such that the probation department could investigate and protect against any risks to children, Konsdorf is required to seek permission from the trial court *and* her treatment provider to engage in a sexual relationship with a person who has a child under the age of sixteen. Indeed, under this condition, she must seek permission to engage in a sexual relationship with an adult who has a child under the age of sixteen regardless of whether that adult even has a relationship or any contact with the child. In other words, this probation requirement mandates that Konsdorf seek permission twice over to engage in a sexual relationship with an adult who is a parent to a child under the age of sixteen based merely on that adult's parenthood. We find such a requirement to be overly broad in its goal of protecting children. We remand to the trial court with instructions to clarify this probation condition so that it is narrowly tailored to the goal of protecting children.

## C. Incidental Contact

[57] Konsdorf next challenges her probation condition that prohibits her from having any contact with any person under the age of sixteen unless she receives court approval or successfully completes a court-approved sex offender treatment program. The condition specifies:

20. You shall have no contact with any person under the age of 16 unless you receive court approval or successfully complete a court-approved sex offender treatment program, pursuant to IC 35-38-2-2.4. Contact includes face-to-face, telephonic, written, electronic, or any indirect contact via third parties.

Appellant's App. Vol. II p. 46.

[58] Konsdorf relies on *McVey v. State*, 863 N.E.2d 434, 449 (Ind. Ct. App. 2007), in which this Court held that a probation condition requiring the defendant to "report any incidental contact with persons under age 18" to his probation officer was overly broad. Here, however, Konsdorf's probation condition does not include a provision prohibiting incidental contact. Regarding probation conditions that prohibit contact with any person under the age of sixteen unless prior approval is obtained, our court has held that the probation condition as to intentional contact with persons under sixteen to be constitutional but that, under such a condition, a probationer is not required to avoid inadvertent or unintentional contact with persons under sixteen. *Rexroat v. State*, 966 N.E.2d 165, 173 (Ind. Ct. App. 2012). Accordingly, Konsdorf's condition of probation does not prohibit incidental contact with minors. Konsdorf's argument regarding this probation condition is unavailing.

[59] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to clarify two of Konsdorf's probation conditions.

Bailey, J., and Altice, J., concur.