## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 13 2018, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian R. Chastain
Dillman Chastain Byrd, LLC
Corydon, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Pumphrey,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

February 13, 2018

Court of Appeals Case No.
88A04-1707-PC-1568

Appeal from the Washington Superior Court

The Honorable Frank Newkirk, Jr., Judge

Trial Court Cause No.
88D01-1703-PC-202

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, James R. Pumphrey (Pumphrey), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

# ISSUE

Pumphrey raises one issue on appeal, which we restate as: Whether the post-conviction court erred in denying Pumphrey's petition for post-conviction relief.

# FACTS AND PROCEDURAL HISTORY[1]

On March 20, 2015, the Washington County Sheriff's Department received a report from a citizen alleging that Pumphrey was in possession of a stolen Polaris Sportsman all-terrain vehicle (ATV), which Pumphrey was urgently attempting to sell. That same day, Raymond Hardin (Hardin) contacted the Washington County Sheriff's Department to report that a number of items had been stolen from his hunting lodge, including a Polaris Sportsman ATV, a chainsaw, an air compressor, camouflage clothing, and DVDs. When an Indiana State Police trooper subsequently conducted a traffic stop of the vehicle in which Pumphrey had earlier been observed as a passenger, two male

---

[1] The post-conviction court specifically took judicial notice of the probable cause affidavit and charging information, and we rely on the same for ascertaining the facts and procedural background of this case.

occupants fled the vehicle. An inventory search resulted in recouping a chain saw and an air compressor, both of which Hardin confirmed to be his.

[5] The next day, March 21, 2015, police officers received consent from Pumphrey's then-girlfriend, Melissa Sams (Sams), to search their shared residence. The officers seized DVDs and hunting clothing, and Sams further informed them that she had recently observed Pumphrey, along with Cody Doyle (Doyle), to be in possession of an ATV, a chainsaw, and an air compressor. Police officers thereafter interviewed Doyle, who admitted that he and Pumphrey had entered Hardin's hunting lodge and garage and stolen the reported items. Pumphrey and Doyle sold the ATV to someone in Kentucky. Doyle also confessed that he and Pumphrey had stolen metal from outside of another dwelling on March 20, 2015, which was confirmed with the owner, Stephen McClain. Further investigative interviews with Sams revealed that Pumphrey had committed three additional burglaries in Washington County since approximately November or December of 2014, stealing a flat screen television from a dwelling belonging to Jason Hawkins; stealing copper piping, mounted deer heads, and record albums from a supposedly abandoned home owned by Kendra Floyd; and stealing Blu-Ray discs and pizzas from another dwelling owned by Dave Andress. The owners of these three properties also confirmed with law enforcement that the reported items had been stolen. It was later discovered that, on January 16, 2015, Pumphrey had stolen tools, hunting equipment, and musical equipment from Michael Wimmer, as well as a chain saw and an air compressor from Todd Campbell.

[6] On April 9, 2015, the State filed an Information, charging Pumphrey with Count I, burglary as a Level 4 felony, Ind. Code § 35-43-2-1; Count II theft as a Level 6 felony, I.C. § 35-43-4-2; Count III, burglary as a Level 5 felony, I.C. § 35-43-2-1; Count IV, theft as a Level 6 felony, I.C. § 35-43-4-2; Count V, aiding, inducing, or causing a burglary as a Level 4 felony, I.C. §§ 35-41-2-4, -43-2-1; Count VI, aiding, inducing, or causing a burglary as a Level 5 felony, I.C. §§ 35-41-2-4, -43-2-1; Count VII, burglary as a Level 4 felony, I.C. § 35-43-2-1; Count VIII, aiding, inducing, or causing a burglary as a Level 4 felony, I.C. §§ 35-41-2-4, -43-2-1; Count IX, theft as a Level 6 felony, I.C. § 35-43-4-2; Count X, burglary as a Level 5 felony, I.C. § 35-43-2-1; Count XI, aiding, inducing, or causing a burglary as a Level 5 felony, I.C. §§ 35-41-2-4, -43-2-1; Count XII, theft as a Level 6 felony, I.C. § 35-43-4-2; Count XIII, burglary as a Level 4 felony, I.C. § 35-43-2-1; Count XIV, aiding, inducing, or causing a burglary as a Level 4 felony, I.C. §§ 35-41-2-4, -43-2-1; Count XV, theft as a Level 6 felony, I.C. § 35-43-4-2; and Count XVI, theft as a Level 6 felony, I.C. § 35-43-4-2. On April 20, 2015, the State added Count XVII, burglary as a Level 4 felony, I.C. § 35-43-2-1; and Count XVIII, theft as a Level 6 felony, I.C. § 35-43-4-2. On June 3, 2015, the State also charged Pumphrey with Count XIX, theft as a Level 6 felony, I.C. § 35-43-4-2. At the time the Information was filed, Pumphrey had already accumulated a significant criminal history, including prior convictions for burglary and theft. As a result, on September 14, 2015, the State charged Pumphrey with a habitual offender sentence enhancement as Count XX, I.C. § 35-50-2-8.

[7] The trial court appointed a public defender to represent Pumphrey. The public defender reviewed the evidence against Pumphrey, including the statements of his co-defendants and Pumphrey's recorded confession to at least one of the burglaries, as well as Pumphrey's substantial criminal record. Considering the charges and the habitual offender enhancement, Pumphrey's public defender was "concerned that it would turn into . . . what is effectively a life sentence for [Pumphrey]." (Tr. Vol. II, p. 28). Thus, the public defender sought to negotiate a plea bargain. Initially, the State offered a plea agreement, whereby Pumphrey would plead guilty to the Level 4 felony burglaries and would receive a twenty-nine-year sentence, of which twenty-two years would be executed and seven years would be suspended. Pumphrey rejected this deal because it involved "too much time." (Tr. Vol. II, p. 8).

[8] Thereafter, the State agreed to reduce the Level 4 felony burglary charges to Level 5 felonies and to dismiss a number of charges, including the habitual offender enhancement. The new offer called for a sixteen-year sentence. Pumphrey's public defender advised him to accept the plea agreement, opining that it was "as good as it's going to get." (Tr. Vol. II, p. 31). Accordingly, on November 6, 2015, Pumphrey agreed to plead guilty to Count I, burglary as a Level 5 felony; Count VII, burglary as a Level 5 felony; Count X, burglary as a Level 5 felony; Count XIII, burglary as a Level 5 felony; Count XVI, theft as a Level 6 felony; Count XVII, burglary as a Level 5 felony; and Count XIX, theft as a Level 6 felony in exchange for the dismissal of the remaining charges. On December 1, 2015, the trial court accepted Pumphrey's guilty plea—finding that

it was supported by a factual basis, that it was "freely and voluntarily made," and that Pumphrey understood the nature of the charges against him and the possible consequences thereof. (Appellant's App. Vol. II, p. 53). The trial court imposed an executed sentence of "[thirteen] years; an additional [three] years shall be served if [Pumphrey] violates conditions of probation." (Appellant's App. Vol. II, p. 54). Following his release, Pumphrey was to be "placed on probation for a period of [four years]." (Appellant's App. Vol. II, p. 54).

[9] At some point after commencing his term of incarceration in the Indiana Department of Correction, Pumphrey—who has only an "eighth or ninth" grade education—personally conducted legal research in the prison's library and concluded that he had been "pushed and tricked" into accepting a plea deal with a higher sentence than he believed he deserved. (Tr. Vol. II, pp. 19, 22). After retaining counsel, on March 27, 2017, Pumphrey filed a petition for post-conviction relief. In his petition, Pumphrey alleged that he was entitled to post-conviction relief because:

> (a) [t]he charges were too vague to properly [d]efend the case[;]
>
> (b) [t]he case was over charged as Level 5 Burglaries, making [Pumphrey] improperly believe he was in danger of more prison than he was[;]
>
> (c) [s]entence [v]iolates [Indiana Code section] 35-50-1-2(2) [b]ecause the most serious crime for which [Pumphrey] is sentenced is a Level 5 felony, the total of the consecutive terms of imprisonment may not exceed seven(7) years[; and]
>
> (d) [Pumphrey's] attorney aggressively encouraged [him] to take

a plea agreement, against [his] better judgment. His attorney continued to encourage [his] plea even after [he] asserted [his] innocence multiple times. His attorney failed to review the witness statement and failed to understand the facts of this case at the time of his plea.

(Appellant's App. Vol. II, p. 6).

[10] On May 11, 2017, the post-conviction court conducted a hearing on Pumphrey's petition. On June 9, 2017, the post-conviction court issued Findings of Fact, Conclusions of Law, and Judgment Denying Post-Conviction Relief. In particular, the post-conviction court determined that the charging documents were "sufficiently specific to have advised [Pumphrey] of the charges being lodged against him." (Appellant's App. Vol. II, p. 35). Furthermore, the post-conviction court found that "the offenses to which [Pumphrey] pled were not a connected series of offenses closely related in time, place and circumstance" that would have required capping the consecutive sentences at seven years as it would have otherwise done for an episode of criminal conduct. (Appellant's App. Vol. II, p. 35). The post-conviction court also found that Pumphrey was not denied the effective assistance of counsel and that his guilty plea was entered knowingly, intelligently, and voluntarily.

[11] Pumphrey now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

A post-conviction proceeding provides a petitioner with the "opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal." *Maymon v. State*, 870 N.E.2d 523, 526 (Ind. Ct. App. 2007) (citing *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002)), *trans. denied*. A post-conviction proceeding, however, is not "a super appeal," as it "provide[s] only a narrow remedy for subsequent collateral challenges to convictions." *Id.* (citing *Ben-Yisrayl*, 738 N.E.2d at 258). A conviction imposed as a result of a guilty plea is "not an issue that is available to a defendant on direct appeal[;] any challenge to a conviction thus imposed must be made through the procedure afforded by the Indiana Rules of Procedure for Post–Conviction Remedies." *Hall v. State*, 849 N.E.2d 466, 472 (Ind. 2006).

In reviewing the judgment of a post-conviction court, our court considers only the evidence and reasonable inferences supporting the post-conviction court's judgment. *Id.* at 468. The post-conviction court "is the sole judge of the evidence and the credibility of the witnesses." *Id.* at 468-69. When appealing the denial of a petition for post-conviction relief, "the petitioner stands in the position of one appealing from a negative judgment." *Willoughby v. State*, 792 N.E.2d 560, 562 (Ind. Ct. App. 2003), *trans. denied*. Because post-conviction proceedings are civil in nature, the petitioner bears the burden of establishing his grounds for relief by a preponderance of the evidence. *Stevens v. State*, 770

N.E.2d 739, 745 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003); *see* Ind. Post-Conviction Rule 1(5). To prevail on appeal, the petitioner must demonstrate "that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court." *Hall*, 849 N.E.2d at 469. Where, as here, the post-conviction court enters findings and conclusions pursuant to Indiana Post-Conviction Rule 1(6), we will reverse "upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* (quoting *Ben-Yisrayl*, 729 N.E.2d at 106). "Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law." *Id.*

## II. *Withdrawal of Guilty Plea*

[14]     On appeal, Pumphrey's sole claim is that he did not knowingly, intelligently, and voluntarily plead guilty. Specifically, Pumphrey insists that he would not have entered into a plea agreement that provided for a sixteen-year sentence if he had "known the facts involving the level of felony charged and the crime spree/concurrent eligibility." (Appellant's Br. p. 10). At the outset, we note that Pumphrey's argument wholly fails to comply with Indiana Appellate Rule 46(A)(6) and (8), and our court would be justified in finding that Pumphrey has waived appellate review of his case. Nevertheless, notwithstanding Pumphrey's inadequate recitation of facts and lack of a cogent, well-supported argument, we discern from the record that Pumphrey is essentially arguing that his charges could have been deemed to constitute a single episode of criminal conduct,

which, pursuant to Indiana Code section 35-50-1-2(d)(2), would have required a sentence cap of seven years. Furthermore, Pumphrey also contends "that he was misled in to thinking that all charges were [L]evel 4 felonies and that he was facing at least twenty-nine (29) years." (Appellant's Br. p. 10). He maintains that the State's evidence did not support initially charging him with seven Counts of Level 4 felony burglary; rather, Pumphrey argues that while Count I could properly have been a Level 4 felony, the rest were "likely [L]evel 5 felonies." (Appellant's Br. p. 10). Accordingly, he requests that we either "vacate his convictions" or "remand the case back for additional evidence regarding whether the facts and circumstances of the case involve an episode of criminal conduct." (Appellant's Br. p. 11).

[15] "A post-conviction petitioner must be allowed to withdraw his previous guilty plea whenever the withdrawal 'is necessary to correct [a] manifest injustice' that occurred because 'the plea was not knowingly and voluntarily made.'" *Richardson v. State*, 800 N.E.2d 639, 643 (Ind. Ct. App. 2003), *trans. denied*; *see* I.C. § 35-35-1-4(c). While Pumphrey's petition for post-conviction relief did not specify that he was seeking to withdraw his guilty plea, at the post-conviction relief hearing, Pumphrey's attorney questioned whether Pumphrey believed that he had suffered a manifest injustice. Although Pumphrey did not understand that specific terminology, he did answer "[y]es sir" when his attorney questioned whether Pumphrey understood that he was "not asking that everything be dismissed and you walk away, but that just the plea essentially is withdrawn." (Tr. Vol. II, pp. 10-11). To the best we are able to decipher his

assertions, we will treat Pumphrey's claim on appeal as seeking a withdrawal of his guilty plea because it was not knowing, intelligent, and voluntary. I.C. § 35-35-1-4(c)(3).[2]

[16] "A valid guilty plea is a confession of guilt made directly to a judicial officer and necessarily admits the incriminating facts alleged." *Carter v. State*, 739 N.E.2d 126, 128 (Ind. 2000). Because "[a] guilty plea constitutes a waiver of constitutional rights," the trial court must "evaluate the validity of every plea before accepting it." *Davis v. State*, 675 N.E.2d 1097, 1102 (Ind. 1996). In order for a guilty plea to be valid, "the defendant's decision to plead guilty must be knowing, voluntary[,] and intelligent." *Id.* (citing *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969)). Indiana law provides that a trial court cannot accept a guilty plea "without first determining that the defendant understands the nature of the charges against him and that pleading guilty waives a number of valuable constitutional rights." *Id.* (citing I.C. § 35-35-1-2(a)). "[C]oncerns about injustice carry greater weight when accompanied by credible evidence of involuntariness, or when the circumstances of the plea reveal that the rights of the accused were violated." *Coomer v. State*, 652 N.E.2d 60, 62 (Ind. 1995). In general, if a trial court undertakes the steps set forth in Indiana Code section 35-

---

[2] Although the term "ineffective assistance of counsel" was not mentioned in his petition for post-conviction relief, it was suggested at the post-conviction hearing that Pumphrey's public defender had been ineffective by failing to adequately advise Pumphrey of the parameters of his guilty plea and/or negotiate a better plea agreement. The post-conviction court specifically found that Pumphrey's public defender did not render ineffective assistance. On appeal, Pumphrey has not developed an argument regarding ineffective assistance of counsel and the same is therefore waived.

35-1-2 to ensure that a plea is voluntary—*i.e.*, determining that the defendant understands the nature of the charges against him and has been informed of certain rights, "a post-conviction petitioner will have a difficult time overturning his guilty plea on collateral attack." *Richardson*, 800 N.E.2d at 643.

[17] The post-conviction court, in concluding that Pumphrey's guilty plea was knowing, intelligent, and voluntary, specifically found that Pumphrey "entered a plea of guilty to the charges contained in the plea agreement; . . . initialed and signed the plea agreement that was filed with the [trial court][;] . . . [and] testified truthfully at the plea hearing in regard to his guilt to the charges for which he was sentenced." (Appellant's App. Vol. II, p. 36). Additionally, the post-conviction court found that Pumphrey "chose to accept the offer based upon advice of counsel that if he went to trial that he could receive a much greater sentence;" and that Pumphrey advised his public defender "prior to his acceptance of the plea agreement that he was guilty of the crimes for which he was sentenced." (Appellant's App. Vol. II, p. 36). Pumphrey does not now challenge these findings; nor does he contend that he was not adequately advised of the rights he was surrendering by pleading guilty. Rather, Pumphrey now claims that his plea was not knowing and voluntary because he did not know at the time he signed the plea deal that he could have received a lesser sentence if the trial court had determined that his crimes were part of an episode of criminal conduct.

[18] Trial courts are vested with authority to "determine whether terms of imprisonment shall be served concurrently or consecutively" based on a

consideration of aggravating and mitigating circumstances. I.C. § 35-50-1-2(c). However, "the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions [that do not include crimes of violence] *arising out of an episode of criminal conduct* shall not exceed" seven years "[i]f the most serious crime for which the defendant is sentenced is a Level 5 felony." I.C. § 35-50-1-2(c),(d)(2) (emphasis added). An "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b). "Whether certain offenses constitute a 'single episode of criminal conduct' is a fact-intensive inquiry to be determined by the trial court." *Slone v. State*, 11 N.E.3d 969, 972 (Ind. Ct. App. 2014) (internal quotation marks omitted) (quoting *Schlichter v. State*, 779 N.E.2d 1155, 1157 (Ind. 2002)). The trial court may consider "the timing of the offenses and the simultaneous and contemporaneous nature, if any, of the crimes." *Williams v. State*, 891 N.E.2d 621, 631 (Ind. Ct. App. 2008). "[A]dditional guidance on the question can be obtained by considering whether the alleged conduct was so closely related in time, place, and circumstance that a complete account of one charge cannot be related without referring to the details of the other charge." *Id.* (internal quotation marks omitted) (quoting *Reed v. State*, 856 N.E.2d 1189, 1200 (Ind. 2006)).

[19] Ultimately, Pumphrey's argument that he did not knowingly plead guilty boils down to an assertion that his public defender did not thoroughly explain the sentencing scheme for an episode of criminal conduct in advising him to plead

to the terms outlined in the plea agreement. Although we are addressing this case in the context of a "straightforward claim[] of an involuntary . . . plea" rather than ineffective assistance of counsel, our courts have determined that

> [w]hether viewed as ineffective assistance of counsel or an involuntary plea, the postconviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and postconviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the postconviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

*Graham v. State*, 941 N.E.2d 1091, 1101-02 (Ind. Ct. App. 2011) (quoting *Segura v. State*, 749 N.E.2d 496, 504-05 (Ind. 2001)). During the post-conviction relief hearing, Pumphrey testified that he had specifically inquired with his public defender "about a crime spree," to which his public defender answered that "it doesn't qualify for a crime spree cause there's a lapse in date and times. . . . [B]asically I more or less got shut down." (Tr. Vol. II, p. 10). Pumphrey's public defender similarly testified at the post-conviction hearing that her opinion had been that, because Pumphrey's crimes involved different victims and were committed at different times and places, the trial court would not have found there to be an episode of criminal conduct and would have imposed consecutive sentences—especially in light of Pumphrey's criminal record. Accordingly, the public defender advised Pumphrey to accept the plea agreement to avoid a harsher sentence.

[20] The post-conviction court determined that "[b]ased upon the facts of the case, the crimes to which [Pumphrey] pled were not an 'episode of criminal conduct' and [Pumphrey] was not entitled to concurrent sentencing." (Appellant's App. Vol. II, p. 37). We agree. Looking to the probable cause affidavit, it is clear that Pumphrey committed multiple burglaries and thefts from at least seven properties over the course of several months. The burglaries and thefts "were not simultaneous or continuous," and "a complete account of" each burglary/theft could "be given without referring to the other offense[s]." *Slone*, 11 N.E.3d at 972; *Hope v. State*, 834 N.E.2d 713, 716 (Ind. Ct. App. 2005). Thus, Pumphrey would not have received a seven-year sentence cap had he forgone the plea deal, and his public defender rendered correct advice. Moreover, Pumphrey admitted that his public defender had provided essentially the same explanation about his crimes not qualifying as a "crime spree" in encouraging him to accept the plea agreement. (Tr. Vol. II, p. 10). Thus, we find no basis for Pumphrey's contention that he lacked knowledge of the consequences of pleading guilty.

[21] Finally, we find no merit in Pumphrey's arguments regarding being misled into believing "that all charges were [L]evel 4 felonies and that he was facing at least twenty-nine (29) years." (Appellant's Br. p. 10). Despite the State initially charging him with twenty Counts, including several Level 4 felonies and a habitual offender enhancement, Pumphrey pled guilty only to five *Level 5* felonies for burglary and two *Level 6* felonies for theft. All other charges were dismissed. A Level 5 felony is punishable by "a fixed term of between one (1)

and six (6) years, with the advisory sentence being three (3) years." I.C. § 35-50-2-6(b). A Level 6 felony is punishable by "a fixed term of between six (6) months and two and one-half (2 ½) years, with the advisory sentence being one (1) year." I.C. § 35-50-2-7(b). Thus, for the charges to which Pumphrey agreed to plead, he was facing a possible maximum sentence of thirty-five years if all terms were imposed consecutively. Instead, his public defender negotiated a sixteen-year term, which ultimately resulted in Pumphrey receiving an executed sentence of thirteen years, with an additional three years to be served in the event of a probation violation. Pumphrey acknowledged his understanding of the terms of his plea agreement, and he fails to explain how he was misled, let alone how he was misled to his detriment. Rather, the facts of this case clearly establish that Pumphrey, who had been facing a plethora of serious charges, willingly entered into a beneficial plea agreement with full knowledge of the rights that he was surrendering and the consequences that he was facing. The post-conviction court did not err in determining that Pumphrey's guilty plea was knowing, intelligent, and voluntary; therefore, Pumphrey did not suffer a manifest injustice that would require a withdrawal of his guilty plea.

## CONCLUSION

Based on the foregoing, we conclude that the post-conviction court did not err in denying Pumphrey's petition for post-conviction relief because his guilty plea was knowing, intelligent, and voluntary.

Affirmed.

Baker, J. and Brown, J. concur